## CASIMIR J. WELCH v. HUGH J. McGOWAN, CHARLES E. SMALL and RANDAL MORGAN, Appellants.

**Division Two, December 23, 1914.**

1. **NEGLIGENCE: Obstruction in Public Street: Knowledge.**
Where a plaintiff, driving in a buggy, in broad daylight, along
a public street, with actual knowledge of the existence of loose
gas pipes and other temporary obstructions therein, is injured
by the wheel of his buggy coming in contact therewith, he can-
not recover for his resulting injuries, unless he exercised ordi-
nary care to observe and avoid such obstructions. The rule
that in driving along a public highway he had the right to as-
sume (without looking) that said highway was free from ob-
structions, has no application where he had actual knowledge
of such obstructions. Such actual knowledge required him to
keep a diligent lookout for them.

2. ———: ———: ———: **Protruding Gas Pipe: Failure to Look:
Contributory Negligence.** And though the defendant were neg-
ligent in permitting the end of a large gas pipe to protrude into
that part of the street left open to public travel, that did not
relieve the driver of a buggy along the part left open from
the duty of keeping a lookout for temporary obstructions after
he observed that the street was torn up for the purpose of lay-
ing gas pipes; and if, with such knowledge, he did not look out
for such protruding end, and fails to show that he could not
have driven around it if he had looked and seen, his injury must
be *held* to be the direct result of his own negligence.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

REVERSED.

*Gage, Ladd & Small* for appellants.

(1) The demurrer to the evidence ought to have
been sustained. Phelan v. Paving Co., 227 Mo. 666;
Hesselbach v. St. Louis, 179 Mo. 505; Craine v. Met.
St. Ry., 246 Mo. 393; Nessler v. Wrecking Co., 156
App. Div. (N. Y.) 348; Johnson v. New York, 208 N.

Y. 77; Nolan v. King, 97 N. Y. 565; Westfall v. Water Commissioners, 93 Mich. 210; Lockport v. Licht, 221 Ill. 35; District of Columbia v. Moulton, 182 U. S. 576; Dart v. Bagley, 110 Mo. 42; Sedalia ex rel. v. Smith, 206 Mo. 346; Glaser v. Rothschild, 221 Mo. 180; Kansas City ex rel. v. O'Connell, 99 Mo. 357; Vogelgesang v. St. Louis, 139 Mo. 127; Fogg v. Nahant, 98 Mass. 578; McFarlane v. Sullivan, 99 Wis. 361; Johnson v. Superior, 103 Wis. 66; Ritger v. Milwaukee, 99 Wis. 190; Long v. Moon, 107 Mo. 334; Nugent v. Milling Co., 131 Mo. 241; Payne v. Railroad, 136 Mo. 562; Sanguinette v. Railroad, 196 Mo. 466; Weltmer v. Bishop, 171 Mo. 110; Avery v. Fitzgerald, 94 Mo. 207; Flynn v. Wacker, 151 Mo. 545; Champagne v. Hamey, 189 Mo. 709; State v. King, 203 Mo. 560; Meier v. Proctor & Gamble Co., 81 Mo. App. 410; Stafford v. Adams, 113 Mo. App. 717; Pickens v. Railroad, 125 Mo. App. 669; Schaub v. Railroad, 133 Mo. App. 444; Brockman Com. Co. v. Aaron, 145 Mo. App. 307; Graefe v. Transit Co., 224 Mo. 232; Trigg v. Land Co., 187 Mo. 22; Coin v. Lounge Co., 222 Mo. 508; Oates v. Met. St. Ry., 168 Mo. 535; Cohn v. Kansas City, 108 Mo. 387; McFarlane v. Elevated Ry. Co., 194 Mass. 183; Morgan v. Lewiston, 91 Me. 566; McCloskey v. Moies, 19 R. I. 297. (2) The demurrer to the third amended petition ought to have been sustained. Morgan v. Lewiston, 91 Me. 566; McCloskey v. Moies, 19 R. I. 297; Kansas City ex rel. v. O'Connell, 99 Mo. 357.

*Walsh, Aylward & Lee* and *E. R. Morrison* for respondent.

(1) Appellants were negligent in permitting the pipe in question to project into the traveled way. Primarily the public are entitled to the use of the entire street. Kossman v. St. Louis, 153 Mo. 59; Schoop v. St. Louis, 117 Mo. 131. And one who obstructs or encroaches upon it has the burden of showing the ob-

struction to have been reasonably necessary and with, the least danger to public travel. Senhenn v. Evans-ville, 140 Ind. 678; Jackson v. Robinson, 26 Wis. 642. The encroachment must be reasonable in extent and in time, and must be non-negligent. Gerdes v. Iron & Foundry Co., 124 Mo. 354; Dougherty v. St. Louis, 251 Mo. 525; Phelan v. Paving Co., 227 Mo. 707; Hessel-bach v. St. Louis, 179 Mo. 522; Dillon on Municipal Corporations (5 Ed.), sec. 1170; Fugate v. Somerset, 97 Ky. 48; Pottier v. Gas Co., 183 Pa. St. 575; Pen-nock v. Douglas County, 39 Neb. 305; Chicago v. Bro-phy, 79 Ill. 279; Frazier v. Borough, 172 Pa. 403, 51 Am. St. 739. (2) The evidence shows that plaintiff had not lost control of his horse. Even if he had lost control this would not bar his recovery. Hull v. Kan-sas City, 54 Mo. 598; Winship v. Enfield, 42 N. H. 197; Vogelgesang v. St. Louis, 139 Mo. 127; Ring v. Cohoes, 77 N. Y. 83; City of Joliet v. Shufeldt, 144 Ill. 403; Opdycke v. Railroad, 29 L. R. A. (N. S.) 71; El-liott on Roads & Streets (3 Ed.), sec. 793; Railroad v. Stone, 54 Kan. 83; Weisner v. Dillon, 29 Mont. 122; Crawfordsville v. Smith, 79 Ind. 308; Manderschied v. Dubuque, 25 Iowa, 108; Martin v. Algona, 40 Iowa, 390; Turn. Co. v. Bateman, 68 Md. 389; Dillon v. Ra-leigh, 124 N. C. 184; Gray v. Water Power Co., 27 Wash. 713; Baldwin v. Turnpike Co., 40 Conn. 238; Augusta v. Hudson, 94 Ga. 135; Janes v. Tampa, 52 Fla. 292, 120 Am. St. 203; McLemore v. City of West End, 159 Ala. 235; Emporia v. White, 74 Kan. 864; McDowell v. Preston, 104 Minn. 263, 18 L. R. A. (N. S.) 190. Even if he lost control it was only tempo-rary. Johnson v. Marquette, 154 Mich. 50. (3) Plain-tiff was not negligent in failing to discover the ob-struction. Coffey v. Carthage, 186 Mo. 573; Alexan-der v. St. Joseph, 170 Mo. App. 376; Barr v. Kansas City, 105 Mo. 558; Weisenberg v. Appleton, 26 Wis. 59, 7 Am. Rep. 39; Kendall v. Albia, 73 Iowa, 248; Webb v. Heintz, 97 Pac. (Ore.) 753; Valparaiso v.

Schwerdt, 40 Ind. App. 608; Dale v. Syracuse, 24 N. Y. Supp. 968, 71 Hun, 449; Johnson v. Fargo, 15 N. D. 524. (4) The projecting pipe was the cause of plaintiff's injury. (5) Plaintiff did not have knowledge of the projecting obstruction and did not assume the risk thereof. Knight v. Kansas City, 138 Mo. App. 153; Graney v. St. Louis, 141 Mo. 185; Loewer v. Sedalia, 77 Mo. 431; Chilton v. St. Joseph, 143 Mo. 192; Devlin v. St. Louis, 252 Mo. 207; Loftis v. Kansas City, 156 Mo. App. 683; Tackstein v. Bimmerle, 150 Mo. App. 491; Taylor v. Springfield, 61 Mo. App. 266; Keitel v. Cable Ry., 28 Mo. App. 662; Powers v. Ins. Co., 91 Mo. App. 65; Phelan v. Paving Co., 227 Mo. 666; Craine v. Railroad, 246 Mo. 393; Cohn v. Kansas City, 108 Mo. 387; McFarlane v. Railroad, 194 Mass. 183.

BROWN, J.—Action for personal injuries in which plaintiff recovered a judgment for $17,500, and defendants appeal. Kansas City was made a defendant in this action, but, upon the coming in of the testimony, the court sustained a demurrer to the evidence as to said defendant city, whereupon the cause proceeded to judgment against the other defendants above named.

Plaintiff charges that defendants placed a gas pipe on the surface of 13th street in Kansas City, Missouri, in such a negligent manner that it was a dangerous obstruction to said street, and that while plaintiff was driving his horse and buggy eastwardly on said street on April 23, 1907, the wheels of his buggy struck said gas pipe in such manner as to cause plaintiff to be thrown out of his buggy and into a deep ditch, from which fall he received severe and permanent injuries.

The defense is contributory negligence and assumption of risk.

To arrive at a more complete understanding of the manner in which plaintiff received his injuries, we will explain that 10th street and 13th street in Kansas City, Missouri, run east and west, and 10th street lies north of 13th street. Walnut street in said city runs north and south. The first north-and-south street lying west of Walnut is Main street, and the second parallel street west of Walnut is Baltimore avenue. The block between Walnut and Main streets is divided north and south by an alley.

At the time plaintiff received his injuries defendants had dug a ditch and were preparing to lay a large gas pipe along 13th street from Walnut to Baltimore avenue. Defendants had deposited gas pipes twelve feet long and eighteen inches in diameter along the north side of this ditch from Walnut street to the alley which divides the block lying between Walnut and Main.

There is a slight conflict in the evidence as to whether these gas pipes were lying all along the north side of the ditch from Walnut street to Baltimore avenue. Plaintiff says that he does not remember seeing any gas pipes except between Walnut street and the first alley west thereof. He did, however, remember observing (before his injury) that 13th street was "cut open" with a ditch all the way from Baltimore avenue to Walnut street.

Thirteenth street has a width of about thirty-five feet from curb to curb. The ditch was dug by defendants a little south of the center of the street, and a roadway for vehicles was kept open along the north side of the ditch. There is some conflict as to the width of this roadway, but practically all the witnesses state that there was room enough between the north curb of the street and the pipes placed beside the ditch aforesaid for two wagons to pass each other by careful driving.

Plaintiff, whose age was thirty-seven, started to drive his "black filly" from 10th street to a messenger office kept by him at 13th and Walnut streets. His vehicle was a low buggy, and a young lady accompanied him on the drive. Plaintiff further testified that he did not usually drive along 13th street as he could reach his office at 13th and Walnut by another street, and, therefore, did not know that 13th street was torn up until he drove onto it. He also testified that he drove south from 10th street down Baltimore avenue to 13th street, and thence eastwardly along the north side of 13th street to the alley between Main and Walnut, where the right wheel of his buggy struck a gas pipe left in the roadway by defendants, causing him to be thrown forward and southward into the ditch dug by defendants, whereby he received very severe and permanent injuries.

Plaintiff and his witnesses also testify that defendants had not dug the ditch across the first alley west of Walnut street, but had excavated the ditch up to the east side of said alley and constructed a barricade from the south curb of the street to and across the end of the ditch at said alley. The barricade is variously described as being from eighteen inches high to as high as the seat in the buggy which plaintiff was driving. Said witnesses for plaintiff further stated that the west end of the first gas pipe lying east of said barricade had been left protruding into the roadway left open for use of persons traveling along the 13th street. Some of said witnesses state that the end of said gas pipe stuck out into the roadway one foot, while others thought it protruded as much as six feet, and that it had been left in that condition a week.

The evidence of defendants' witnesses tend to show that the end of the gas pipe did not stick out into the roadway, and that the work of digging the ditch and placing the pipes in 13th street had only been in operation four days.

Plaintiff says that as he was crossing Main street, something like one hundred feet west of the alley, his filly threw her tail over the right check-line and thereafter she went faster. His route was down grade and his horse trotted along. Plaintiff tried to get the check-line or rein from under his filly's tail without success. When he arrived at the barricade across the end of the ditch at the alley beforementioned, he reined his filly to the left around the barricade, but did not see the pipe in the roadway. He then leaned forward to lift the filly's tail off of the rein, and, while in such leaning position, the right wheel of his buggy struck the gas pipe and caused him to be thrown forward and southward into the ditch. Plaintiff further testifies that he could not see the gas pipe before he struck it on account of the barricade. His evidence runs as follows:

"Q. I will get you to describe just how this matter occurred, to these gentlemen, Mr. Welch. A. Well, I drove south on Baltimore to Thirteenth, and then I turned east on Thirteenth, and I got to about the car track and the horse switched her tail and caught the line . . . She was just going kind of little out of a walk—kind of a slow trot; and when she got the line under her tail, she paced up, and I pulled on the line and made one or two efforts to get it from under her tail, and at that time I got to about the alley . . . As I looked out to look ahead I saw that barrier, and I didn't want to hit that. After I came in the roadway there was only eight or nine feet to go through there; and I looked ahead and everything looked clear, excepting a wagon about half way down the block. Then I reached over to lift the line from under the mare's tail, and as I did that the wheel hit this pipe and I went into the ditch, and the lady went right on top of me.

"Q. Where was this pipe, with reference to the

asphalt and dirt and stuff there? What position was the pipe in? A. It was sticking out right in the road.

"Q. This pipe that stuck out in the roadway—how far, to your view, did it appear to be sticking out in the roadway there? A. Oh, two or three feet. I don't remember just how far. I know it was sticking quite a ways out in the roadway.

"Q. How close were you to it when you first saw it? A. I never saw it until I got right on top of it and hit it. As far as that gentlemen there is to the jury (indicating).

"Q. What were you doing from the time you left Main street until you noticed this pipe in front of you? A. I was trying to get the line from under the horse's tail.

"Q. You drove on the north side of Thirteenth street from the time you hit it at Thirteenth and Baltimore, because they were working on the south side of the street? A. They wasn't working there. It was cut open. It was after working hours.

"Q. You say it was 'cut open?' Is that the reason you drove on the north side of Thirteenth street? A. Yes, sir.

"Q. Now, it is down hill all the way from the east line of Main street to this alley and down to Walnut street, ain't it? A. Yes, sir. . . .

"The Witness: When the buggy hit that pipe it went scooting along like it was a rail, and I went further.

"Q. You hit the north side of the pipe and it went scooting along? A. That brought it closer to the ditch as it slid along, and when I went over I hit the hub of the buggy on the second pipe to the east. . . .

"Q. Go ahead and finish your answer. A. (Continuing) I saw the barrier and saw how far it extended into the street, and coming around it I just turned the horse to go past, and in the meantime I was trying to get the line off of its tail.

"Q. You said that you looked ahead and couldn't see the pipe—that you couldn't see this pipe, that was as big as a buggy wheel? A. The barrier was as high as my buggy seat.

"Q. You pulled around that, so as to get rid of it? Whether you call it a 'pile of dirt' or whatever you call it—you pulled around to get rid of it, and you couldn't see the pipe for this pile of dirt, or barrier? A. Well, I didn't see it.

"Q. Could you have seen it? A. I didn't see it. . . . I wasn't looking for a pipe stuck over on the roadway, where they were inviting persons to come in there."

Plaintiff also testified that his filly was gentle; that children could drive her, but admitted that on a former trial of this cause he testified as follows:

"Q. You didn't stop to take her tail off the line? A. No, sir. I was not worrying; she had done that a hundred times before; you see, she is a saddle mare and carries a high tail, and she was always doing that."

Something like a dozen eyewitnesses for plaintiff stated that they saw him and his horse before and at the very time of his injury; that the horse was excited or irritated on account of getting its tail over the line. When the front wheel of the buggy hit the pipe it tipped over to the right, and the horse went on, carrying the shafts of the buggy with her.

## OPINION.

I. Learned counsel for plaintiff and defendants have cited a long list of authorities to sustain their respective contentions, which authorities will be found in the prefixed notes of our official reporter. Many of the cases cited by counsel have little or no bearing upon the issues presented here, because based on facts different from those found in this record.

**Driving on Public Street: Knowledge of Defect.**

There is no dispute over the fact that plaintiff observed that 13th street was "cut open" (as he described it) with a ditch for the purpose of laying pipes therein, before he attempted to drive along said street.

The issue then arises, did the plaintiff, possessing as he did actual knowledge that 13th street was not in its usual state of repair, or in the condition in which streets and roads are ordinarily, exercise ordinary care to observe and avoid such obstructions as were temporarily in said street by reason of the repairs or improvements then being made therein?

There is much well-considered authority which sustains the contention of plaintiff that in driving along a public highway he had a right to assume (without looking) that said highway was free from obstructions, but that rule of law is without application here, because of plaintiff's actual knowledge that said street was not in its usual condition—he had actual knowledge that the street was "cut open" for the purpose of burying a pipe or making some other change therein, and that part of the street was closed by a barricade.

With the actual knowledge on the part of plaintiff it was his duty to keep a diligent lookout for obstructions which might be temporarily in the street by reason of the work that was being done therein, and to anticipate noises which might frighten a team.

The gas pipe which plaintiff's wheel struck was eighteen inches in diameter at the end nearest to plaintiff as he drove against it, yet he swears he did not see it. He declined to state that he could not have seen the pipe in time to have driven around if he had been looking at the ground where his buggy was going —he speaks of reining his horse around the barricade which defendants had constructed partly across the street—that his horse, though a little excited, was gentle and still under control; so we are unable to see any reason why he did not observe the pipe and drive

around it, thereby averting the accident and consequent severe injuries which he sustained.

If it is true that defendants were negligent in allowing one end of the gas pipe to protrude into that part of the street left open for travel, this did not relieve plaintiff of the duty of keeping a lookout for temporary obstructions after he observed that the street was torn up, or partially torn up; so we find that the plaintiff's injury was the direct result of his own carelessness in failing to look where he was driving. Plaintiff's own testimony indicates that he drove against the side of the gas pipe which he claims was negligently left protruding into the roadway, and that his buggy was overturned by striking the end of another pipe which was not left in the roadway, while most of his witnesses testify that his buggy struck the end of the pipe which protruded into the roadway. We think this conflict in the evidence is unimportant. The accident occurred in daylight and plaintiff's eyesight was not impaired. The gas pipe which he struck was lying on comparatively level ground, and had he exercised the diligence which the law and ordinary prudence calls for under the circumstances he would have seen the pipe in ample time to have driven around it.

We have not been able to find any case where the facts were precisely the same as in this one, but the following decisions announce the rule that when one traveling along a public street sees, or otherwise receives actual notice, that such street is out of repair or torn up, he must look for obstructions and other dangers and avoid them if he can do so by exercising ordinary care. [Phelan v. Paving Co., 227 Mo. 666, l. c. 705-6; Nessler v. House Wrecking Co., 156 App. Div. (N. Y.) 348, 350; Nolan v. King, 97 N. Y. 565, l. c. 571-2; District of Columbia v. Moulton, 182 U. S. 576.] The same rule seems to apply where a person traveling any public highway has actual knowledge of an ob-

struction therein.    [Wheat v. City of St. Louis, 179 Mo. 572, 64 L. R. A. 292.]

The conclusions we have reached necessarily result in the reversal of the judgment appealed from. It is so ordered.

*Walker, P. J.,* and *Faris, J.,* concur.