## CARRIE WALDMANN, Appellant, v. SKRAINKA CONSTRUCTION COMPANY.

### Division One, July 23, 1921.

1. **NEGLIGENCE: Contributory: Instructions: Demurrer.** If the defendant was not guilty of negligence, or if its negligence was not the proximate cause of plaintiff's injury, or if the plaintiff herself was guilty of contributory negligence as a matter of law, she has no cause to submit to the jury, and, defendant having asked a demurrer to the evidence, which was refused, no error in the instructions need be considered on appeal, for in such situation there could be no reversible error in any instructions given or refused for either party.

2. ————: ————: **Excavation in Street: Known to Plaintiff.** While a traveler on a public street or sidewalk may ordinarily presume that the way is clear and in good condition, he cannot, if he knows that the same is torn up or obstructed by public work being done thereon, go forward in reliance upon the presumption that the way is clear, but must exercise his faculties to see and discover the dangers he may encounter from such obstruction, and if he fails to do so and is injured thereby he is guilty of contributory negligence and cannot recover damages, although the public authorities or the contractor doing the work may also have been negligent in regard to such obstruction.

3. ——: ——: ——: ——: **Ordinary Care.** In reducing the surface of an alley to proper grade, the concrete sidewalk along the street at the alley's mouth had been broken up and an excavation made ten inches deep and fifteen feet wide. The edge of the broken sidewalk, at the south side of the excavation, was jagged, "like saw teeth" three-eighths of an inch in length. There was a dim red light in the middle of the excavation, and the hole was not fenced. Plaintiff crossed over the excavation early in the evening on her way to a theatre, and saw the red light. She returned about ten o'clock, coming from the north along the sidewalk, crossed the excavation to the south side without difficulty, and as she attempted to step up onto the sidewalk her instep struck one of the projections on its edge and she was thrown down and injured. The night was dark and the red light too dim to enable her to see the projection. *Held*, that she had actual knowledge of the excavation, knew how deep and wide it was, and the darkness made it all the more incumbent on her to look out for dangers, including the projection, and she was guilty of such contributory negligence as prevents a recovery of damages.

4. ——: ——: ——: **Darkness.** To walk into and across a hole ten inches deep and fifteen feet wide in a concrete sidewalk, of whose existence and condition the traveler has actual knowledge, in nearly absolute darkness, without being specially careful and without feeling her way as an ordinarily careful person would, is contributory negligence.

5. ——: ——: ——: **Jagged Edges.** Where the traveler knew that the broken place and deep and wide hole in the concrete sidewalk, made by a contractor with the city in bringing an alley to proper grade, which she attempted to cross over on a dark night, was incomplete and unfinished work, she was put upon notice and bound to look for and anticipate dangers connected with it, including the jagged edge of the broken line of the sidewalk and the danger of tripping when her feet came in contact with its sharp projections.

Appeal from St. Louis City Circuit Court.—*Hon. Frank Landwehr,* Judge.

AFFIRMED.

*Sale & Frey* for appellant.

(1) Any person, and particularly a contractor who creates an excavation in a public highway, is bound at

common law to keep such place so guarded and in such a condition that pedestrians using the highway will not be injured. Williamson v. Mullins, 180 S. W. 395; McDonald v. Transit Co., 108 Mo. App. 374; Wiggins v. St. Louis, 135 Mo. 566. It makes no difference whether the pedestrian falls into the excavation or is injured in stepping out of it. Louisville v. Nicholls, 165 S. W. 660; Bowman v. Ogden City, 33 Utah, 196, 93 Pac. 561; Asher v. City of Council Bluffs, 164 Iowa, 661. This duty was declared very definitely in City Ordinance 1139 of the Revised Code of St. Louis, introduced in evidence. Schlinski v. City of St. Joseph, 170 Mo. App. 380; Ryan v. Kansas City, 232 Mo. 471. Where there is a danger light in an excavation out towards the street where the natural inference would be that it was placed there to warn the drivers of wagons not to drive in an alley which was being made, it cannot be said to be a warning to pedestrians not to use the excavation. Such a light was neither proper at the common law nor under the ordinance. Schlinski v. City of St. Joseph, 170 Mo. App. 380. (2) The fact that plaintiff knew of the excavation does not charge her with contributory negligence as a matter of law, since she did not fall into the excavation, but sustained her injuries in getting out of the excavation. She had passed over the excavation to the north in safety earlier in the same evening and she had a right to assume, therefore, that the sidewalk was safe when she returned, going to the south. The question of contributory negligence in such character of cases is always one for the jury. Devlin v. City of St. Louis, 252 Mo. 203; Loftis v. Kansas City, 156 Mo. App. 683; Willis v. St. Joseph, 184 Mo. App. 428; Bar v. Kansas City, 105 Mo. 550. One need not abandon a convenient method of travel in a public street because of a danger unless the use of the street, under the circumstances, is absolutely inconsistent with ordinary care and the mere fact of the knowledge of the danger is not sufficient to defeat the right of recovery. Bentley v. Hat Co., 144 Mo. App. 612; Tockstein v. Bimmerly, 150 Mo. App. 491.

*M. N. Hayden* and *John P. Griffin* for respondent.

(1)   There is no reversible error in this record for the reason that appellant is not entitled to recover upon any theory of negligence alleged.   First, there is a failure of proof of (a) negligence on the part of respondent and (b) any causal connection between any of the negligence alleged and appellant's injury, and, secondly, the evidence of appellant herself establishes beyond question that her injury resulted wholly from her own negligence in failing to raise her foot high enough to reach the sidewalk, as she attempted to step upon it. She knew that she had to step up out of the alley to the sidewalk, but she, nevertheless, permitted her foot to strike against the edge of the sidewalk, thereby causing her to fall.   She herself says that the projecting piece of the edge of the sidewalk, about which so much complaint is made, came in contact with her foot at the instep.   Necessarily, therefore, a portion of her foot must have gone under, instead of over, the edge of the sidewalk.   That situation resulted from her act.   As a matter of law, she was guilty of negligence proximately causing her injury and the trial court should have so held.   Not being entitled to have her case submitted to the jury at all, and the verdict having been in favor of respondent, there can be no errors, either in instructions or in the admission of evidence offered by respondent, warranting a reversal of this judgment.   (a)   This court has the power to reverse this judgment only in the event that it believes that error was committed by the trial court "materially affecting the merits of the action."   R. S. 1919, sec. 1513; Freeland v. Williamson, 220 Mo. 217, 229; Mann v. Doerr, 222 Mo. 1, 15; Moore v. L. Ry. Co., 176 Mo. 528, 545; Mockowik v. Railroad Co., 196 Mo. 550, 568.   (b)   If the record discloses that the evidence offered by plaintiff wholly failed to establish that she is entitled to recover or entitled to have her case submitted to the jury at all, then the verdict of the jury having been in favor of defendant,

there can be no error in any instructions given at the instance of the respondent which can be held to be reversible error. Wagner v. Elec. Co., 177 Mo. 44, 60; Bradley v. Tea Co., 213 Mo. 320; Trainer v. Mining Co., 243 Mo. 359, 371; Shinn v. Railroad Co., 248 Mo. 173, 181; Shelton v. Light Co., 258 Mo. 538; Boesel v. Express Co., 260 Mo. 453; Moore v. L. Ry. Co., 176 Mo. 528, 545; Mockowik v. Railroad. Co., 196 Mo. 550, 568; Schuepbach v. Gas Co., 232 Mo. 603, 611; Putnam v. Boyer, 173 Mo. App. 394, 401; Lomax v. Ry. Co., 119 Mo. App. 192; Chapman v. Railroad, 240 Mo. 592, 601. (c) A judgment will not be reversed where the right result was reached, though the record may show that the proceedings were irregular, or, perhaps, erroneous. Mockowik v. Railroad Co., 196 Mo. 550, 568; Peterson v. Transit Co., 199 Mo. 331, 344. (d) The error which, it is alleged, inheres in an instruction, must be prejudicial in order to warrant a reversal of the judgment. Mockowik v. Railroad Co., 196 Mo. 550, 568; Bradford v. Ry. Co., 136 Mo. App. 705, 711; Perry v. Van Matre, 176 Mo. App. 100. (e) Where the verdict of a jury is clearly for the right party it should be upheld, even if there should be error in the giving of instructions. Fritz v. Railroad, 243 Mo. 69; Trainer v. Mining Co., 243 Mo. 359; Quinn v. Railroad, 218 Mo. 561.

SMALL, C.—Appeal from the Circuit Court of the City of St. Louis.

Suit for personal injuries. The substantial facts are: The defendant contracted with the City of St. Louis to pave, and for that purpose, to take out the necessary subgrade of an alley between Wells and Ridge Avenues in said city, and which intersected or opened into Hamilton Avenue on the west side of and terminated at said Hamilton Avenue. Hamilton Avenue ran north and south, and said alley east and west, thus entering Hamilton Avenue at right angles. Prior to the commencement of the work by defendant, the granitoid sidewalk on the

west side of Hamilton Avenue was continuous between Wells and Ridge avenues, and ran across the mouth of the alley. The defendant's work contemplated grading and paving the entrance into the alley from the west side of Hamilton Avenue, so that teams and vehicles would have egress and ingress to and from the alley into said avenue. This required the cutting away and removal of the sidewalk and curb where they crossed the mouth of the alley, and the excavating of the subgrade of the approach, which work had been completed at the time plaintiff was injured, to-wit, on the night of July 7, 1918. The excavation thus made was ten inches deep, that is, ten inches below the surface of the granitoid sidewalk, fifteen feet wide (the width of the alley), and about twelve to fifteen feet long, the distance from the curb to the property line. The granitoid sidewalk was cut across, east and west, along the line of the excavation, and its edges were left exposed and were part of the north and south sides of the excavation. The plaintiff, a married lady of mature years, living in the neighborhood, passed over the excavation in safety without difficulty in walking north on the sidewalk, just before dark, on the evening of her injury, in going to a picture show. After the picture show, she started to return to her home the same route, going south on the same sidewalk, accompanied by her maid, whom she had met at the show. This was about ten o'clock at night. When they reached the excavation, the maid, walking just in front of plaintiff, crossed over in safety. The plaintiff following immediately behind stepped down into the excavation and walked across it to the south side, without any difficulty. But, as she undertook to step up the ten-inch rise on the south side, her foot caught, she says, on a projection from the edge of the granitoid walk, and she was thrown to the sidewalk and injured. There was no fence around or about the work. There was one red light in the center of the excavation near the curb line. The granitoid walk was six feet wide, and there was an unpaved park-

way about four or five feet wide between the north line of the walk and the curb. There was no other light or lantern on the work.

The petition charged that as plaintiff was stepping up on the south side of said excavation, due to defendant's negligence, as specified in the petition, she fell on the hard granitoid sidewalk and was injured. There were twelve specifications of negligence in the petition: 1st and 2nd, that in cutting the granitoid sidewalk the defendant left the edge thereof in a rough and jagged condition, which rendered said sidewalk dangerous to pedestrians; 3rd and 4th, that it was dark at the time plaintiff was injured, and defendant negligently failed to provide adequate light; that the one lantern which defendant had provided was burning very low and had bricks around it and that thereby plaintiff could not see her way; 5th, that said excavation rendered said sidewalk dangerous to pedestrians at night; 6th and 7th, that defendant failed to provide an adequate covering for or temporary walk across said excavation; 8th, 9th and 10th, that defendant failed to warn pedestrians of their danger, failed to provide a watchman at said excavation, and failed to provide a proper step from the base thereof to the granitoid sidewalk, so that pedestrains could step with greater safety to the sidewalk therefrom; 11th and 12th, that defendant failed to fence off said excavation with a substantial fence, and that the revised ordinances of said city required it to be fenced with such a fence not less than three feet high and two red lights securely and conspicuously posted on or near said excavation.

Besides a general denial, the answer pleaded contributory negligence.

Substantially all of the plaintiff's witnesses testified that there was a red light in the center of the excavation about the curb line. This red light had some bricks around it, which, one of plaintiff's witnesses said, was usual to keep the lamp from being overturned. There

was no other light and no fence or guard around the work.

Touching the condition of the excavation and especially the edge of the granitoid sidewalk on the south side, two witnesses, who were city employees and inspectors on the job, and one civil engineer, testified for plaintiff, in substance, as follows: That one corner of the granitoid walk—the corner nearest the street—was broken off in a semi-circular form, and about seven inches across. That the edge of the sidewalk was cut off reasonably straight except at this corner where it was broken. One of them said that it was as straight as you could break concrete. It was chipped a little, but not very much. It was cut just as evenly as it was possible to cut out concrete. Unless you hit an expansion joint and have to cut through the center of the slab, you will have a ragged edge. It was a very good job. It was as good as you could get in concrete. "It was kind of like a saw-tooth." The civil engineer saw the work after it was completed, but he could see the line where the sidewalk had been cut. It was a saw-tooth edge, the irregularities or projections were from one-eighth to three-eights of an inch in length; could not say how far apart they were.

A lay witness, who saw the work the next morning, testified for plaintiff: That the edge of the sidewalk on the south side of the alley was not finished at all, kind of sawed. That a corner of the walk towards the street was broken off. That he ran across the street, the night before, when plaintiff was injured, and saw her lying on the sidewalk on the south side of the excavation, near this broken piece. He did not describe the extent of the broken piece or size of the projections which made it "kind of sawed."

The plaintiff's maid testified for plaintiff: That she walked in front of plaintiff, across the excavation all right herself, but plaintiff did not get up and out of the excavation on the south side. That plaintiff fell

while attempting to do so, and the witness turned around, and plaintiff was lying over to the east side of the sidewalk with her legs hanging down in the alley. Her leg was on a broken thing. Witness felt of a piece of broken off sidewalk, it was kind of pointed, it would stick in your hands when you would touch it. After plaintiff fell, witness felt of this sidewalk, and plaintiff's foot at the time was on top of the projection. Both the maid and the said lay witness marked a point on a photograph in evidence right over the broken off corner as the place, thev say, plaintiff's foot was when they first saw her after the accident.

Plaintiff testified in her own behalf, substantially as follows: She crossed the alley going to the picture show in safety. She went there alone and came back with her maid. · Walked back on the same side of Hamilton Avenue. She came to this alley, stepped down into it, and crossed over to the south side. "When I got to the other [south] side, as I wanted to step my foot caught on a piece of sharp point of the concrete, and I fell forward. There was a red light there near the street. There were bricks around it. It was low down in the ground. You couldn't hardly see it. Could not see where to step down from the north side into the alley. It was dark. It was awfully dark there. My foot caught and I fell as I went to step out on the south side of the alley. It was Sunday night, about ten-thirty. The maid was right in front of me. It was near the street where I fell. Just as I stepped off there was a sharp point sticking out and it threw me over." On cross-examination, she said: "It was not quite dark when I went to the picture show. I could see that the alley was being constructed, when I got there. I stepped down into the alley, walked across it, and then stepped up on the sidewalk on the north side, going to the theater. Came back the same way. Stepped down·from the sidewalk, coming back, into the alley from the north side. Had no difficulty; stepped down there all right. Q.

You could see that you had arrived at that alley? A: No, sir, it was dark, I could hardly see. Of course, I knew the alley was there, and stepped down into it from the north side, without falling or missing my footing at all, and walked safely across to the south side. I fell when I went to step up from the alley to the sidewalk on the south side. My maid was walking in front of me. She stepped up on the sidewalk on the south side of the alley in front of me. She was on the sidewalk on the south side, when I fell. Did not see the lamp, when I fell it was back of me. Don't remember when I first saw the lamp. I know it was there. I believe I saw it when I went over. It was in the middle of the alley. It was dark. It was not light enough to see the light. I don't believe I did see it there. I believe it was about the middle of the alley. I saw the bricks around it when I went. I knew, when I came back, that I would have to step down in the alley to walk across it, and knew I would have to step up at the south side onto the sidewalk. I knew that as I was walking across the alley. As I stepped up at the south side just immediately before I fell, one of these projections struck me about the instep. Q. Did you not strike any part of the sidewalk with your toe? A. It struck me here. I know I struck my foot right here, and I fell over. Q. Is what you call the instep? A. Yes, sir. I did not see the part of the sidewalk that struck my instep. I felt it. I did not see it. It was dark. Just felt it. It was one sharp-pointed object that struck my instep. I did not see it at all. I couldn't tell anything about how far it extended out from the sidewalk. I fell forward. I never did get my foot up as high as the sidewalk, the top side of the sidewalk. It caught right here on the sharp point, and I couldn't. The light I saw was red. I did not see the sidewalk, as I was about to step up to it on the south side. It was so dark I could not see where the sidewalk was. Could not see any part of the sidewalk, because I fell so quick.

It was light and shadow there. Did not put my foot up on the sidewalk at the south side, because my foot got caught on the piece of granitoid sticking out. Did not step up on the granitoid, and then slip off, I couldn't, my foot got caught. There was no part of the sidewalk broke under me. The point stuck in my foot, and I fell over. Don't remember whether any other part of my foot went under the sidewalk. All I know about what happened is—this point sticking in my foot, and I fell over. Q. About your instep? A. Yes, sir.''

Plaintiff also introduced in evidence, Section 1139 of the Revised Code of the City of St. Louis, which was as follows:

"*Excavations in street—to be fenced, etc.—obstructions—red light.* Every person who shall cause to be made any excavation in or adjoining any public street, alley, highway or public place, shall cause the same to be fenced in with a substantial fence not less than three feet high, and so placed as to prevent persons, animals or vehicles from falling into said excavations; and every person making or causing to be made any such excavations, and every person who shall occupy or cause to be occupied any portion of any public street, alley, highway, or public place with building materials or any obstruction, shall cause one red light to be securely and conspicuously posted on or near such excavation, building material or obstruction; provided, such obstruction does not extend more than ten feet in length, and if over ten feet and less than fifty feet, two red lights, one at each end, shall be placed, and one additional light for each additional fifty feet or part thereof, and shall keep such lights burning during the entire night.''

Defendant's evidence tended to show that the work was done by a sub-contractor under the defendant's directions, but this defense was not insisted on, or submitted in the instructions given for defendant.

At the close of all the evidence the defendant offered a demurrer to the testimony, which the court re-

fused. The court gave six instructions for the plaintiff. In her instructions, the plaintiff only submitted three grounds of negligence charged in the petition; first, that the defendant negligently left the edge of the granitoid sidewalk with jagged pieces sticking out of the same; second, negligently failed to post a red light on either side of said excavation; third, negligently failed to cover, guard or fence said excavation.

The court also gave a number of instructions for the defendant, as to some of 'which the plaintiff assigns error.

The court also permitted the defendant to ask the plaintiff's maid, whether she did not testify, in a deposition which she gave, to the effect, that the plaintiff fell about the center of the walk. But, in view of the conclusion we have reached, it is not necessary to set out any more of the details of the trial, than we have already done.

The jury found a verdict for the defendant. Plaintiff appealed the case to this court.

I. If defendant was not guilty of negligence, or if its negligence was not the proximate cause of the plaintiff's injury, or if the plaintiff herself was guilty of contributory negligence as a matter of law, she would have no case to submit to the jury, and, therefore, (the defendant having asked a demurrer to the evidence, which was refused), there could be no reversible error in any instructions given or refused for either party, or in any action of the trial court complained of by the appellant. [Bradley v. Forbes Tea Co., 213 Mo. 320; Trainer v. Mining Co., 243 Mo. 359; l. c. 371; Shinn v. Railroad, 248 Mo. 173; Shelton v. Light Co., 258 Mo. l. c. 541; Boesel v. Wells-Fargo & Co., 260 Mo. 463, and other cases cited by learned counsel for respondent.]

*No Right to Recover: Error in Instructions.*

II. It is the settled law in this State that, while a traveler on a public street or sidewalk may ordinarily

presume that the way is clear and in good condition, still, if the traveler knows that the sidewalk or street being used by him is torn up or obstructed by public work being done therein, he cannot go forward, relying on the presumption that the way is clear, but must exercise his faculties to see and discover the dangers that he may encounter from such obstructing public work, and if he fails to do so, and is injured thereby, he cannot recover, on the ground that he himself is guilty of contributory negligence, although the public authorities or the contractor doing the work, may also have been guilty of negligence. [Welch v. McGowan, 262 Mo. 709; Wheat v. City of St. Louis, 179 Mo. 572; Ryan v. Kansas City, 232 Mo. 471; Craine v. Met. St. Ry. Co., 246 Mo. 393; Woodson v. Met. St. Ry. Co., 224 Mo. 685; Kaiser v. St. Louis, 185 Mo. 366; Brady v. St. Joseph, 167 Mo. App. 425; Cohn v. Kansas City, 108 Mo. 387.]

*Street Excavation: Known to Plaintiff.*

In Wheat v. City of St. Louis, 179 Mo. supra, the plaintiff was injured by driving over a pile of earth surrounding a manhole which projected several feet above the surface of the street. The condition had existed for a year, and he was perfectly familiar with it. Held, although the city was guilty of negligence by permitting the obstruction, plaintiff was guilty of contributory negligence, as a matter of law, in not avoiding it. In that case, it was a dark, foggy morning, but it was light enough to see the obstruction had plaintiff looked with reasonable care. The court said at page 579:

"The plaintiff in this case knew of the obstruction in the street, and knew that by the exercise of ordinary care he could avoid striking it while traveling along the street. His act in striking it was, therefore, *per se,* contributory negligence. [Citing many cases.] . . . In Cowie v. Seattle, 4 Mun. Corp. Cas. 417, the Supreme Court of Washington held, that a person who was perfectly familiar with the condition of a sidewalk in which a defect exists, has no right, while using it, to act on the ordinary presumption that it is in good condition. . . .

And at page 582: 'While the city owes the citizen the duty to keep the highways reasonably safe for persons to pass over, the citizen owes the city the duty to use his God-given senses, and not to run into obstructions that he is familiar with, or which by the exercise of ordinary care he could discover and easily avoid.' "

In Welch v. McGowan, 262 Mo. 709, the plaintiff was driving on 13th Street in Kansas City. The defendant had dug a ditch on the south part of the roadway, and had laid a string of gas pipe along the ditch, preparatory to laying the pipe therein. The plaintiff's witnesses testified that one of the gas pipes projected out from one to six feet in the portion of the roadway left open for travel north of the general line of the work and the other pipes. The front wheel of the plaintiff's buggy struck this pipe and threw plaintiff out and seriously injured him. This court held that plaintiff was guilty of contributory negligence, as a matter of law, in failing to discover and avoid the pipe, and could not recover, although defendant may have been guilty of negligence in allowing the pipe to project out into the street. The court said at page 719:

"The accident occurred in daylight, and plaintiff's eyesight was not impaired. The gas pipe which he struck was lying on comparatively level ground, and had he exercised the diligence which the law and ordinary prudence calls for, under the circumstances, he would have seen the pipe in ample time to have driven around it.

"We have not been able to find any case where the facts were precisely the same as in this case, but the following decisions announce the rule, that when one traveling along a public street sees, *or otherwise receives actual notice, that such street is out of repair or torn up, he must look for obstructions and other dangers* and avoid them if he can do so, by exercising ordinary care. [Phelan v. Paving Co., 227 Mo. 666, l. c. 705-6; Nessler v. Housewrecking Co., 156 App. Div. (N. Y.) 348, 350; Nolan v. King, 97 N. Y. 565, l. c. 571-2; District of Columbia v. Moulton, 182 U. S. 576.] The same rule

seems to apply where a person traveling any public highway has actual knowledge of an obstruction therein. [Wheat v. City of St. Louis, 179 Mo. 572, 64 L. R. A. 292.]''

In the Welch Case, the plaintiff testified he did not see the gas pipe he struck, but he admitted that he knew that the street was cut open for the purpose of burying a pipe or making some other change therein. In view of this fact, the court said on page 718: ''With [this] the actual knowledge on the part of plaintiff, it was his duty to keep a diligent lookout for obstructions *which might be* temporarily in the street by reason of the work that was being done therein, and to *anticipate* noises which might frighten a team . . . If it is true, that dedefendants were negligent in allowing one end of the gas pipe to protrude into that part of the street left open for travel, this did not relieve plaintiff of the duty of keeping a lookout for temporary obstructions after he observed that the street was torn up, or partially torn up; so we find that the plaintiff's injury was the direct result of his own carelessness in failing to look where he was driving.''

In Robison v. Kansas City, 181 S. W. 1004, where the plaintiff was injured by falling into an excavation in the street at night, of which she had no previous knowledge, and it was so dark she could not see, Court in Banc, while holding that the above cases did not apply in that case, affirmed the doctrine laid down in said cases, which it announced as follows, pages 1005-6:

''The doctrine announced in these cases, about which there is no controversy except as to its application here, is that if a pedestrian with knowledge of a defect or obstruction in a street or sidewalk uses same and is thereby injured, he is guilty of such contributory negligence as to preclude recovery.

''The facts in the cases cited by defendants are not parallel with those in the case at bar. There the injuries complained of were received in the daytime. Here they were at night, and so great was the darkness that

plaintiff could not see her husband, who preceded her but a few steps on their way homeward. The darkness was due, so far as the city was concerned, to its negligence in not keeping the arc light burning at the intersection of the streets, and so far as the Parker-Washington Company was concerned in its failure to erect a barrier and to keep warning lights at the point where the excavation had been made.

"There in each of the cases cited, evidence of the plaintiff's knowledge of the defect or obstruction was shown. Here the only evidence was that plaintiff could not see the intersection of the streets in question from her home, and not having been to Lauderdale's store since the grading began until the night of the accident, *did not know the location of the excavation.*" (Italics ours.)

In the case at bar, the plaintiff was familiar with the excavation, having seen it before dark in passing over it a few hours before her injury. Knew how deep and wide it was. How far she would have to step down and step up to cross it and that "the alley was being constructed," that is, she knew the work was unfinished. She must also have seen that the edges of the concrete walk were in the sides of the excavation, and she says she did see the red light on the work, when she crossed over going to the theater. The fact, that it was dark when she returned, made it all the more incumbent on her to look out for dangers and difficulties in passing over this unfinished and temporary crossing, which she knew was not in a completed condition, fitted for ordinary or permanent use by pedestrians. But, while she says it was dark at the time she returned, and was injured, yet her evidence shows that it was not so dark but that she knew when she reached the work and could see well enough to step down and walk across it without any difficulty or assistance from her maid, who immediately preceded her and crossed completely over without injury or trouble. If so, it must have been light enough for the plaintiff to step out of the cut without injury by the exercise of due care, because if any dif-

ference, it required more light for her to discover the excavation and to step down and into and across it, than to step up and out of it, after she had discovered it and knew she was in it. The physical facts thus testified to by plaintiff and her maid nullify her evidence to the effect that it was so dark that she could not see to step out of the excavation.

We, therefore hold, that plaintiff's own testimony shows that she was guilty of such contributory negligence as prevented her having any case for the jury.

III. But let us assume it was as dark as plaintiff says it was.

In Diamond v. Kansas City, 120 Mo. App. 185, the plaintiff was injured at night by falling into a hole in a plank sidewalk. The walk was elevated some four or five feet above the ground, and one of the hand-rails was missing. Plaintiff was familiar with the walk and knew that several planks six or eight inches wide were absent, but did not remember the exact location of the opening into which he fell. The night was dark and the street lamps out. And plaintiff's vision was further obscured by smoke from the railroad yards nearby. The walk had been in that condition for a month or more, and the holes had been observed by plaintiff when he went to work that evening. He was injured when returning home about midnight. The court held, he was guilty of such contributory negligence as precluded recovery. The court said at pages 189-90:

"The facts before us do not warrant the inference that the few openings in the sidewalk in all events necessarily menaced the safety of a pedestrian, particularly that of one who knew of their presence. Except when surrounded by utter darkness, plaintiff by giving ordinary attention to his course easily could have avoided stepping into any of them. But being plunged into what he pictures to be complete darkness, and knowing that the holes were there, his conduct in proceeding at the gait and in the manner he walked in the daytime ap-

pears to be palpably negligent. He neither attempted by using the one good hand-rail to provide himself with the means of recovering his balance should he make a misstep, nor did he feel his way with his feet and thus make sure of the safety of his footing before placing his weight on the advancing foot, as people usually do who are compelled to grope in darkness. It is true, contributory negligence is an affirmative defense, but plaintiff's own statement of what he did shows that he made not the slightest effort to avoid the dangers, which, from the fact of darkness, were threatening in the highest degree. And there is nothing in the record from which the inference may be drawn that he acted with reasonable care. He trusted entirely to chance to escape and, assuming that the distance of each of his steps was approximately thirty inches and that he had to pass over three transverse openings in the sidewalk, he had no more than an even chance of missing a fall. Thus, the danger under all the circumstances in the situation was such that it certainly menaced his safety and, as he utterly failed to take any measures to avoid it, his own negligence stands forth indisputably as the producing cause of his injury and precludes recovery.''

We think, the above ruling of the learned appellate court is sound law and applicable to this case. If it was as dark as plaintiff claims it was, she walked into and across the cut without being specially careful in nearly absolute darkness and took no special care and did not feel her way when she came to the south side and attempted to step up on to the granitoid sidewalk, as an ordinarily careful person would have done under the circumstances—if it was as dark, or anything like as dark, as plaintiff says it was.

IV. But, it is strenuously argued by appellants's learned counsel that while plaintiff knew of the fact that there was a cut there, and that she would have to first step down, and then up about ten inches in crossing

**Jagged Edges.** it, she did not know of the jagged points on the edge of the concrete on which her foot was caught. But her evidence shows she did know that it was an incomplete and unfinished public work, and, therefore, under the Welch Case, supra, she was put upon notice and was bound to look out and anticipate dangers connected with the work, which included stumbling or tripping on the exposed edge of the concrete walk, which she knew she would have to encounter and step over in again crossing the excavation as she returned home. The red light was also a warning to look out for danger.

It is self-evident that if plaintiff had exercised anything like the care which, with her admitted knowledge of the situation and circumstances which surrounded her, the law demanded of her, she never would have been injured, and, therefore, she was not entitled to recover in this case.

Let the judgment be affirmed. *Ragland, C.,* concurs; *Brown, C.,* not sitting.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur; *Graves, J.,* in separate opinion in which *Blair, C. J.,* concurs.

GRAVES, J. (concurring).—I concur in this opinion except as to the citation of Welsh v. McGowan, 262 Mo. 709. Having heretofore read the record in that case, I do not desire to be in the attitude of endorsing the result there reached. The general principles of the law are properly announced in Welsh's case, but the facts were misapplied to those principles. I mean the record facts. There is a difference between stated facts and record facts. *James T. Blair, J.,* concurs in these views.