LETITIA NOLAN, Respondent, *v.* DAVID H. KING, Jr., Appellant.

97  565
130  287

Where a person, who, with due authority from the municipal authorities, has removed the sidewalk of a city street, and excavated for the purpose of constructing a vault, builds a bridge over the excavation, which in order to allow the work of construction to proceed is necessarily raised above the level of the street, he is not required to make the same as perfectly safe and convenient as was the sidewalk removed; his duty is to build it with care and prudence, such as will reasonably protect persons passing; *i. e.*, make it safe for those who exercise on their part such ordinary care and prudence as the presence of the temporary structure requires; the traveler is bound to observe its presence, and to exercise a care and prudence which might be unnecessary upon the sidewalk.

Where, therefore, in an action to recover damages for injuries alleged to have been caused by defendant's negligence in constructing such a bridge, the court charged that it was defendant's duty " to have the bridge constructed in such a manner that plaintiff would not be subjected to any more personal risk than if the sidewalk had been there instead of the bridge." *Held*, error.

*Clifford* v. *Dam* (81 N. Y. 56), *McGuire* v. *Spence* (91 id. 303), *Wasmer* v. *D. L. & W. R. R. Co.* (80 id. 212), *Irvine* v. *Wood* (51 id. 224 distinguished.

(Argued December 3, 1884 ; decided January 20, 1885.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made December 4, 1882, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for injuries alleged to have been caused by plaintiff's negligence.

The defendant was the contractor for the erection of a building at the north-east corner of Grand and Mercer streets in the city of New York; included in his contract was the building of a vault under the sidewalk of Grand street. For the purpose of covering the excavation made in which the vault was to be built, the defendant caused a temporary bridge to be built over the sidewalk along the front of the building. This bridge was about six feet wide, and raised nearly two feet

above the sidewalk with steps at each end. The steps at the westerly end were two in number. The top of the first step from the bottom was eight inches wide at one end, and nine and one-half inches wide at the other, with a rise of seven inches from the crosswalk over Mercer street; the second step was thirteen inches wide with a rise of five inches from the step below it, and the floor of the bridge was ten inches above the top of the second step.

On the 7th of May, 1881, shortly before six o'clock, P. M., the plaintiff was passing along Grand street on her way home, and after passing over this bridge, in descending the westerly steps, slipped and fell, thus receiving the injury complained of.

The further material facts appear in the opinion.

*Joseph S. Auerbach* for appellant. The court erred in refusing to nonsuit the plaintiff. (2 Laws 1882, chap. 24, § 86, subd. 17; id., chap. 85, §§ 323, 324; *Irvine* v. *Wood*, 51 N. Y., 224; *Sexton* v. *Zett*, 44 id. 430.) The structure being lawful, and the action, therefore, one for negligence, no negligence of the appellant was shown, while negligence of the respondent was. (*Loftus* v. *Union Ferry Co.*, 84 N. Y. 455; *Dougan* v. *Champ. Tr. Co.*, 56 id. 1; *Crocheron* v. *Ferry Co.*, id. 656; *Cornman* v. *Eastern Counties R. Co.*, 4 H. & R. 781; *Crafter* v. *Metropolitan Ry. Co.*, L. R., 1 C. P. 300.) It was error to charge that "the defendant was under a liability to have the bridge constructed in such a manner that the plaintiff would not be subjected to any more personal risk than she would have had if the sidewalk had been there instead of the bridge. (*Dygert* v. *Schenck*, 23 Wend. 446.) It was error to charge the jury that the degree of care incumbent upon plaintiff was the caution which reasonably prudent men and women exercise *in passing over a sidewalk.* (*Grippen* v. *N. Y. C.*, 40 N. Y. 45.)

*John O. Mott* for respondent. All that the plaintiff was bound to prove was, that in passing along the street she was injured by this structure, which had been erected by the de-

fendant or his authority. It was not *necessary* to prove negligence or want of contributory negligence. (*Payne* v. *Troy and Boston R. R. Co.,* 83 N. Y. 572; *Clifford* v. *Dam,* 81 id. 52, 57; *Irvine* v. *Wood,* 51 id. 224; *McGuire* v. *Spence,* 91 id. 303.) The structure was an absolute nuisance, and the defendant was liable, irrespective of any question of negligence. (*Clifford* v. *Dam,* 81 N. Y. 52; *Irvine* v. *Wood,* 51 id. 224.) If the permit authorized the erection of this structure, then the defendant was not only bound to plead it, but to allege and prove a compliance with its terms and that the structure was properly made and maintained to secure the same safety to the public that the sidewalk would have secured without it. (*Clifford* v. *Dam,* 81 N. Y. 56; *Wasmer* v. *D. L. & W. R. R. Co.,* 80 id. 212; *Irvine* v. *Wood,* 51 id. 224; *McGuire* v. *Spence,* 91 id. 303.) The plaintiff had a right to presume the structure to be safe; she was bound to no special care, and cannot be charged with negligence for not being on her guard against an unlawful obstruction, or for not looking for it, although it was visible. (*McGuire* v. *Spence,* 91 N. Y. 303; *Painton* v. *N. C. R. R. Co.,* 83 id. 7; *Vogel* v. *Mayor, etc.,* 92 id. 10.) The plaintiff was bound to only ordinary care and prudence. (*Worley* v. *G. St. & N. R. R. Co.,* 83 N. Y. 121; *Weston* v. *N. Y. E. R. Co.,* 73 id. 595.)

FINCH, J. The complaint in this action was grounded upon negligence in the construction of the bridge over the vault opening. There is no allegation that its existence was unlawful, or that it constituted an unauthorized obstruction of the street, and so was a wrong, or a nuisance; but, on the contrary, the complaint assumed a lawful construction, for it was averred that "it became and was the duty of the defendant so to erect and maintain the said bridge, or wooden walk aforesaid, and the approaches or steps leading thereto and therefrom, * * * * in good order and in proper and safe condition," and then avers that the structure was built in a careless and negligent manner, and was allowed to fall into and remain in a dangerous state and condition. Upon the trial the plaintiff proved that she

fell while descending the steps from the bridge; that those steps were of unequal height and width and guarded by no railing at the side, and after proof of the injury rested her case. The defendant moved for a nonsuit claiming that there was no negligence, which motion was denied. Evidence was then given of the mode and manner of construction; of the permission granted by the department of public works to build the vault; and of the city ordinances relating to the subject; and after a renewal of the motion for a nonsuit, which was again denied, the defendant rested. The court then charged the jury, and submitted to them solely the question of negligence in the construction or maintenance of the bridge; saying explicitly that the defendant under the permit from the department of public works had the right to erect a bridge over the excavation in question, and that no cause of action was shown unless the jury should find the defendant guilty of negligence. Neither side controverted this proposition, or took exception to it; but, on the contrary, the learned counsel for the plaintiff in his brief on this appeal expressly says not only "that the case went to the jury on the question of negligence in constructing the steps," but also that "it was tried on that understanding." It will not do now to say that there was no authority for building the bridge at all, and that its very existence was an affirmative wrong for which the judgment may be sustained. That would be extremely unjust in view of the pleadings and the course of trial. We must treat the action, therefore, as the parties and the court treated it, as involving only the question of negligence in the construction of the bridge, and so considered, a very important question arises as to the degree of care and prudence in that construction which devolved upon the defendant. The jury were told that "the defendant was under a liability to have the bridge constructed in such manner that the plaintiff would not be subjected to any more personal risk than if the sidewalk had been there instead of the bridge." To this instruction the defendant excepted. The doctrine thus declared was not inadvertent or unintentional. It is repeated not less than six times in the

course of the charge and so woven into it as to be its most prominent feature. The jury were told " if in your deliberation you reach the conclusion that this bridge was less safe than the sidewalk would have been and this lady in passing over it exercised the caution which reasonably prudent men and women exercise in passing over a sidewalk then you will pass to the consideration of the amount of your verdict." Here again the defendant excepted, pointing his objection to the test of reasonable care on the part of plaintiff supplied to the jury. And to make the true position of the court still plainer, the judge was asked to charge " that if the jury believe the bridge and steps were constructed in a reasonably safe and proper manner plaintiff cannot recover," which instruction was refused and the defendant again excepted. Since walking over an unbroken level is undeniably safer than ascending or descending steps, however carefully constructed, the jury were left to the possibility of an inference that any construction of a bridge above the level of the street involving the presence of steps was negligence as matter of law. It is not at all certain that such an idea was in the mind of the court, and yet the language used was broad enough to cover it, and quite sure to leave a jury in danger of being misled. To its full extent it was approved by the General Term without the least restriction or limitation, and in the respondent's brief on this appeal it is distinctly argued that the cover of the excavation should have been on the level of the old sidewalk, thus dispensing with steps entirely. The doctrine of the charge to its full extent and in its entire scope was defended in the General Term and is sought to be justified on this appeal by a series of decisions in this court. (*Clifford* v. *Dam*, 81 N. Y. 56; *McGuire* v. *Spence*, 91 id. 303; *Wasmer* v. *D. L. & W. R. R. Co.*, 80 id. 212; *Irvine* v. *Wood*, 51 id. 224.)

In the first of these cases a vault was built with an opening in the sidewalk to receive coal, but the cover to the opening, intended to remain there permanently and to constitute a part of the sidewalk, was so imperfectly constructed that it gave way and injury followed. We said that the builder was bound

to make the sidewalk as safe as it was before it was excavated. But we did not at all say that he was bound to do that during the process of construction. In the present case the builder was required to restore the sidewalk which he had excavated, to its original safe condition, but that is not saying that he must keep it so during the process of construction.

That process implies and compels a temporary removal of the sidewalk, and, either it must be left impassable and guarded and protected as an excavation, or bridged above the sidewalk level so that the work of building or restoration can go on beneath it and without obstruction to the public travel; or, at least, the question whether, consistently with the construction of the vault, it was not necessary to build the bridge above the sidewalk level; whether any covering at such level was possible, such as would permit at the same time and with equal safety the work of construction and the passage of the public; and whether, if so, the temporary covering at grade, with the inevitable process of change from stone to wood, and then from wood to stone, might not have involved greater risk to the passers-by than the construction of the elevated bridge; all these were questions of fact for the jury and not of law for the court. They were made questions of law by force of the charge which in effect denounced as negligent a construction of the bridge which, by reason of its steps, was not and could not be made to involve as little risk to the public as the level sidewalk. If that is the law, builders will be compelled to stop passage entirely and turn the public into, or across, the carriage-way with all the risks and inconveniences which must necessarily result. The second of the cases cited was, also, that of a vault or area left uncovered and without guard, after the process of construction was ended and when there was nothing to warn the public of possible danger. The third case cited was that of a railroad which had interfered with a public street and failed to restore it to its original or useful condition. In like manner the last case cited was that of a coal vault left imperfectly covered after the work of construction was complete. All of these cases require of the builder

what is possible and what is just, but none of them lay down
a rule of law that a rightful removal of the sidewalk to build a
vault must, during the temporary period of construction, be
accompanied by the presence of a new sidewalk just as safe as
the one removed.   Practically, that is saying that the vault
shall not be built, or, that while building, passage shall be
turned into the roadway, or across to the opposite walk; a
measure palpably as dangerous, and even more so than a pru-
dent and proper bridge.   In all such cases it is inevitable that
the passage of the public, temporarily, is made less convenient
and not so perfectly safe as before the removal of the sidewalk;
but if this is done with prudence and care, with good judg-
ment, and properly and attentively, so as not to be perilous to
passengers in the street, the builder is not responsible for an
accident.   The rule applied upon the trial of this case would
tend to make impossible any temporary occupation of the
street by builders during the process of construction.   One,
who, with the permission of the public authorities, without
disturbing the sidewalk, piles brick in the roadway, leaving
room for wagons to pass, necessarily narrows the roadway and
does not and cannot keep it in as safe condition for the pas-
sage of carriages as it was before such occupation.   Such an
occupation of the street in the city of New York is lawful
(*Rehberg* v. *Mayor, etc.*, 91 N. Y. 143), but does not leave the
street in as safe a condition for passage as it was before the
pile of brick was placed upon it.   Such a test cannot be ap-
plied.   The rule in case of an excavation, duly authorized, is
that it shall be carefully guarded so as to be reasonably free
from danger to travelers upon the street.   (*Brusso* v. *City of
Buffalo*, 90 N. Y. 679.)   If it is covered, and the public in-
vited to pass over it, reasonable care requires that it should be
so strongly and so prudently constructed as to involve no peril
to those passing over it and exercising the ordinary care appro-
priate to the situation.   It is not to be expected, and cannot
be required, that the temporary covering shall equal in safety
and convenience the sidewalk removed, or that passengers may
cross with as little heed and care as upon the completed pave-

ment, and the duty of the builder is not to be thus measured until his work is done and opened to public passage as a completed sidewalk. The necessities of building involve some inconvenience to the public. Temporarily it must be borne in view of the other public benefit resulting from freedom of construction, and where it occurs the traveler is bound to observe its presence, and give to his passage some of the care and observation which he may assume to be unnecessary upon the completed sidewalk. But if the builder opens his covering to the passage of the public, although only as a temporary substitute, he must be deemed to declare it safe and free from peril to persons crossing with such ordinary prudence and care as the presence of the temporary structure requires; and so he must build it with so much of care, and skill, and prudence as will reasonably protect the passers from peril, and enable them with some ordinary attention to their steps to pass it with safety. The necessity is exceptional upon both sides. In the present case the steps were of unequal height and width, and there was some evidence that they were guarded by no side rail, and the question of negligence should have been presented to the jury upon all the facts and circumstances of the case, but without setting up the removed sidewalk, and passage over it, as the measure of the builder's duty and the traveler's care.

For this error the judgment should be reversed, and a new trial granted, costs to abide the event.

All concur, except DANFORTH, J., dissenting.

Judgment reversed.