(101 App. Div. 257)

## SHEPARD v. BELLOW & MERRITT CO.

(Supreme Court, Appellate Division, Third Department. January 4, 1905.)

1. HIGHWAYS—DANGEROUS CONDITION—NEGLIGENCE.

> Where defendants, who were contractors, reconstructing a road, had given a notice to the public that the road was in a dangerous condition, and should be considered as closed, and plaintiff had actual notice of its condition by recent use, defendants are not liable for the loss of one of plaintiff's horses resulting from the use of the road while in such condition.
>
> Chase and Houghton, JJ., dissenting.
>
> [Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Highways, § 501.]

Appeal from Trial Term.

Action by Horace B. Shepard, Jr., against the Bellow & Merritt Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Charles O. Pratt (D. M. Westfall, of counsel), for appellant.
H. V. Borst, for respondent.

PARKER, P. J. This case has been tried upon the theory that the defendants were engaged in building a state road between Aiken and Amsterdam, in Montgomery county, N. Y., under the "Good Roads Law," and we must assume that such was the fact, upon this appeal. The following facts therefore are to be deemed established: That the defendants were rightfully in possession of the highway, and carrying on the work therein which they did carry on. That they had not barricaded the road, nor entirely shut the same up from public use; but that they had given notice to the public, by posted notices, that for a distance of about a mile and a quarter the road was closed and in a dangerous condition. And it is plain that the work of construction was in progress along that whole length. Of these facts the plaintiff had full knowledge. Notwithstanding such notice, the public generally continued to travel over this section of the highway. On August 27, 1903, the defendants had for a distance of several hundred feet raised the road up to grade by filling it up from 12 to 15 inches. Such filling was made of cobble and other stones in the bottom of different sizes, and of clay on top. This was preparatory to constructing a macadam road above it; and the grading where the accident happened had been done several days before it occurred, and such grading ex-

tended across the whole width of the road which was to be there constructed. It had rained considerably for some time before the accident, and the earth was soft and muddy. During the forenoon of the 27th, which was a fair day, the plaintiff's driver had passed over the road twice. On these occasions he took the north side of the roadway, next to the railroad track, which ran along the north side of the highway. About 2 o'clock in the afternoon he again started to pass over the same highway with a team and load of coal weighing some 3,010 pounds. The wagon weighed about 1,700 pounds and the horses weighed upwards of 3,000 pounds. When he arrived at or near the place of the injury, he found a large gang of men were filling up the ruts on the north side, where he had passed in the morning, and so he took the southerly side, and attempted to drive along it. He came to a place where it was soft and muddy, and stopped to let the horses rest. Then he went forward till their front feet were in the mud, and again stopped to let them "get wind." Then he drove on until both hind feet were stuck in the mud, and he had to stop. At this spot the fill was then about 15 inches over the ordinary roadbed. One horse then got its right hind leg jammed in between a big cobble stone and the mud or filling around it, and in its effort to draw it out, it threw itself, and that leg was thereby broken, and the horse had to be killed. That driver had been traveling that road very frequently for days after the notices had been put up, and every day for two or three days before the accident, and had seen them filling in the road at that place, and knew the material which was used to make such filling. This action is brought to recover the value of the horse so killed; and such are substantially the facts upon which the jury have rendered a verdict for the plaintiff.

The question is whether such verdict should be sustained. The defendant undoubtedly had the right to make the fill that it did make, and I can discover no reason why it might not use the material which it did use to make it with. No negligence can be charged against it for using stones and clay with which to make a fill 15 inches deep. At least, there is no evidence to show that such material was in any way unsafe or unfit for that work; and the trial judge substantially charged the jury, without any objection on the part of the plaintiff, that negligence could not be predicated for such use. Hence upon this appeal such is the law of this case. The only possible ground of complaint against the defendants, therefore, is a failure on their part to give sufficient notice of the fill and of the material with which it was made. Without discussing just how far such a specific notice should have been given by the defendants to the public generally, it seems clear that this plaintiff, through his agent, Phœnix, had abundant notice of the situation and of any danger attending it. He knew that the defendants were, over the whole mile and a quarter to which the notices put up applied, making the road correspond to a fixed and definite grade line; and he well knew the material which they used for that purpose. When he started to drive over that stretch of mud at which he stopped to rest his team, he knew that it was a stretch of grading recently made, and of what it was constructed. He had knowledge, by his own observation, of every fact that the defendants could have informed him of

had they been there to warn him. He had not only the notice which was given to the public generally, that repairs were being made, and that the road was dangerous, and was to be considered as closed, but he had the knowledge obtained by his own observation while daily passing over the mile and a quarter to which such notice referred. Such notice was, in my judgment, all that could reasonably be required from the defendants under the circumstances of this case. I do not discover, therefore, from this record, that the defendants have been guilty of any negligence in performing the work which they were there with lawful authority to perform. And, so far as the verdict of the jury has found otherwise, it is not supported by the evidence in the case. Nolan v. King, 97 N. Y. 565, 49 Am. Rep. 561; Atwater v. Trustees of Canandaigua, 124 N. Y. 602, 27 N. E. 385. Moreover, I am of the opinion that the plaintiff's driver plainly contributed to the injury complained of by attempting to drive so heavy a team, with so heavy a load, over this new filling. He knew, from the indications before him, that the recent rains had turned the earth into mud, and he could judge, as well as the defendants, as to whether his team would be likely to pull the load through without accident. It must be borne in mind that nothing had been done by the defendants which could mislead the plaintiff into supposing that this part of the road was finished, or in a safe condition to travel over. Clearly, the driver must be deemed to have made the effort at his own risk, and no just cause of action has been established against the defendants. This judgment should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except CHASE and HOUGHTON, JJ., dissenting.