(156 App. Div. 348.)

### NESSLER v. NEW YORK HOUSE WRECKING CO.

(Supreme Court, Appellate Division, Second Department. April 30, 1913.)

1. MUNICIPAL CORPORATIONS (§ 805*)—TEMPORARY STRUCTURES OVER STREETS
—LIABILITY.

The relative rights and obligations of a traveler and a contractor, erecting under municipal authority a temporary covered bridge over sidewalks to enable him to demolish a building without interrupting traffic, must be determined by a consideration of the extraordinary circumstances, and a traveler may not expect that the passageway is either as convenient or as safe as that afforded by a sidewalk under ordinary conditions.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1677, 1683; Dec. Dig. § 805.*]

2. MUNICIPAL CORPORATIONS (§ 819*)—TEMPORARY STRUCTURES OVER STREETS
—LIABILITY.

In an action for injuries to a pedestrian while attempting to pass from a roadway to the sidewalk, caused by stumbling over the sill forming a part of a temporary covered bridge over the sidewalk erected by a contractor demolishing a building, evidence *held* not to support a finding of actionable negligence, based on the failure of the contractor to prevent access to the sidewalk from the roadway by a railing, or in not cutting down the height of the sill.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1739–1743; Dec. Dig. § 819.*]

Appeal from Trial Term, Westchester County.

Action by Hannah Nessler against the New York House Wrecking Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and STAPLETON, JJ.

John H. Jackson, of New York City (Ambrose F. McCabe, of New York City, on the brief), for appellant.

M. S. Bevins, of New York City, for respondent.

JENKS, P. J. The defendant was the contractor for the demolition of the Grand Central Railroad Station in the borough of Manhattan. It built a temporary covered bridge over the adjacent sidewalks, so that its work could be doing without interruption of the passage of travelers and without danger to them. This bridge was built pursuant to municipal permit, which prescribed certain requirements, and in accord with certain specifications; and it was built subject to the continuous inspection of the city authorities. The construction included a flat board along and on both sides of the sidewalk and for the full length of the bridge, which flat supported uprights, which in turn supported another flat, on which rested crosspieces, on which in turn the planks of the cover rested. The flats on the sidewalk were termed "sills," and were of plank 3 inches high and 10 inches wide. They were laid about 12 or 15 inches from the curbs. About 6 p. m. of November 22, 1910, the plaintiff, a woman of mature age and, so far as it appears, of normal faculties, crossed·from the southwest

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

corner of Park avenue and Forty-Second street towards the Grand Central Station, which is located partly upon the last-named street, and in order to get upon this bridge, stepped up onto the curb, and as she proceeded stumbled over the sill and fell, to her injury. She has recovered a verdict for the negligence of the defendant in the construction and maintenance of the said bridge.

[1] The case was tried upon the proposition that the sill should have been cut out. The duty owed by the defendant to travelers along such passageway is defined in Nolan v. King, 97 N. Y. 565, 49 Am. Rep. 561. The traveler cannot expect that the temporary passageway is either as convenient or as safe as that afforded by a sidewalk under ordinary conditions; but the extraordinary circumstances must be taken into consideration, in our view of the relative rights and obligations of the traveler and of the defendant.

[2] In the case at bar the plaintiff was not a traveler along the passageway that took the place of the sidewalk, but sought access to it from the roadway of the street; but I think that the principle of Nolan v. King applies. The case presents no features of defective material or defective work, but turns entirely upon the defective plan. The proof adduced by the plaintiff as to such negligence is found, if at all, in the testimony of an expert called by the plaintiff, who was of opinion that the sill should have been thus cut down, and who testified that in the borough of Manhattan it was always customary, where such sills were on a curb at sidewalks and crossings, to cut them out. But upon cross-examination he testified that he spoke of street crossings; that is, where two streets intersect. There is no dispute that Park avenue does not intersect Forty-Second street, and therefore the point of the accident was not within this limitation by the witness.

On the other hand, the president of the defendant testified that the beams or sills were put in to support the uprights, so that they would not slip or slide, that they were set in from the curb for the reason that the chief of the fire department instructed him that the department would not allow them to be laid outside of the plugs of the fire hydrants, and that, even if this requirement had not been made, a standing of the uprights upon the line of the curb would have endangered contact with passing trucks. He further testified that the defendant made no difference in construction at the point opposite the Hotel Belmont, which hotel is situate on the corner of Park avenue and Forty-Second street. The first division engineer of the New York Central & Hudson River Railroad Company, in charge of the demolition, testifies that the sills were absolutely necessary to the construction, and that he would have been afraid to have the sills taken out at the point of the accident. The city inspector of buildings, who inspected the work carried on by the defendant, testified that in his opinion such construction at the point of the accident was necessary.

I think that a verdict that rested upon the negligence of the defendant in not cutting down the sill was against the weight of the evidence. I think that the exercise of due care did not require the defendant to prevent access to the passageway by a railing.

The judgment and order must be reversed, and a new trial must be granted; costs to abide the event. All concur.