MORRIS MAGID, Respondent, *v.* THE CITY OF NEW YORK and Another, Appellants.

First Department, December 18, 1931.

*Milton I. Hauser* of counsel [*Louis Diamont* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel*], for the appellant the city of New York.

*Frank M. Wilcox* of counsel [*Clarence E. Mellen*, attorney], for the appellant Garhill Realty Corporation.

*Bernard Gordon* of counsel [*Jasie & Solomon*, attorneys], for the respondent.

MERRELL, J.   On July 28, 1927, plaintiff, then a man of the age of fifty-one years, received personal injuries by the breaking of a plank in a part of a sidewalk in front of premises situated at 218 Duane street, borough of Manhattan, New York city.  Plaintiff was the keeper of a stand for the sale of sandwiches, candy and other refreshments at 189 West street.  Plaintiff's stand was in the vicinity of the premises where he received his injuries.  The premises at 218 Duane street were owned by the defendant Garhill Realty Corporation.  On the day in question, at about three o'clock in the afternoon, plaintiff delivered a sandwich and a bottle of soda to Phillip Ruggiero at the store of Ruggiero & Son, who were tenants of the defendant Garhill Realty Corporation at 218 Duane street.  After delivering the sandwich and bottle of soda to Ruggiero, plaintiff left the Ruggiero store and stepping out upon a plank sidewalk, the same broke through with him and he fell

into space beneath, his right leg going in up to his crotch. He received very serious injuries. One of his testicles was injured, and he received serious injuries to his right knee, necessitating a serious surgical operation to his knee, compelling his absence from his business for substantially a year. The seriousness of the injuries sustained by plaintiff is not questioned and the appellants do not claim that the verdict of the jury for $2,500 in plaintiff's favor was at all excessive.

At the point where the accident occurred, the distance from the store front to the street curb was substantially fifteen feet. Of this over four and one-half feet were planked over along in front of the Ruggiero store, the greater part of which was used for storing and displaying vegetables. Outside of this planked portion of the sidewalk there was a cement sidewalk about ten feet six inches in width. The contention on the part of the defendant city was that the place where plaintiff fell was no part of the sidewalk, and that the city was not responsible therefor or for keeping the same in repair, and that the same was not used by pedestrians in passing along the street. However, we find at the trial that the planked portion where the plaintiff fell was treated as a part of the sidewalk. Indeed, the court in instructing the jury charged as follows: " There is a duty upon the defendant, that is upon the owner of property to keep the sidewalk abutting his premises in good repair, and that duty also is cast upon the city. Now, one of the questions in this case is whether or not that sidewalk was maintained in a reasonably safe condition. Was it maintained in good repair? If you find that it was not, then you must determine whether or not the plaintiff did anything to contribute to this accident. In other words, plaintiffs in cases of this character in order to recover must show you that this injury was caused solely through the negligence of the defendant. So that the first thing is to determine whether or not the plaintiff, in going in and out of 218 Duane Street, in the manner in which he did, did so as a reasonably prudent person would have done under like circumstances and under like conditions. If you find that he did, then proceed to the second proposition, which I attempted to explain before, and determine whether or not the City and the defendant owner maintained the sidewalk in good repair. If you find that a dangerous condition existed there, or that it was out of repair the defendants would be liable, provided they had either actual or constructive notice of its condition." There was no exception taken by either defendant to such charge, and the law as stated by the court became the law of the case. We think, for the purposes of this appeal, we must regard the space where plaintiff fell as a part of the sidewalk. The

evidence during the trial also referred to that portion that was planked as a part of the sidewalk. The city surveyor testified as follows: " This sidewalk from the house line to the curb is fifteen feet wide. The planking extends from the house line toward the direction of the curb out three and a half feet." It appeared that beyond this there was a wooden coping of about one foot nine inches. In the requests by the assistant corporation counsel for charges to the jury the corporation counsel referred to the place where the plaintiff fell as a part of the sidewalk. We think, under the evidence and the pleadings in the case, the plank platform which broke and injured plaintiff was a part of the sidewalk, and it may well be presumed that the city's consent was obtained to the maintenance of such platform. (*Jorgensen* v. *Squires*, 144 N. Y. 280.) In the brief by the appellant city the corporation counsel attempts to distinguish between the use of a sidewalk by persons traveling along a city street and persons traveling to certain street numbers and then crossing the sidewalk to enter a building on the street. It would seem plain that in either case the rights of a pedestrian to use the sidewalk and the duty of the city are the same. Were a pedestrian to enter the Ruggiero store at 218 Duane street from the public street it was necessary to pass over this planking which formed a part of the sidewalk in front of the premises. There is no basis for the city's contention that the planked portion of the walk was used exclusively for the displaying of merchandise. Certainly, the part in front of the entrance to the Ruggiero store was used as a sidewalk. The premises were leased to Ruggiero & Son by the defendant Garhill Realty Corporation. The president of said defendant, appellant, admitted that the planking had been there for some twenty years to his knowledge, and was used for display purposes on the street of vegetables, fruits, etc., and that the planking was almost constantly wet. The evidence of a bystander who was employed in the adjoining store and who saw the accident, was to the effect that the plank originally had been an inch and a half in thickness, but was worn down to about half an inch in thickness at the place where it broke, and that it was rotten and wet at the place where it broke. The planking had been there for many years and there is no evidence that there was inspection, either by the city or by the owner of the store property, to ascertain its condition. The appellant landlord retained general control over the building and the plank walk and it was its duty to see that the sidewalk planking was kept in a reasonably safe condition. An inspection of this old sidewalk would have revealed its rotten and unsafe condition. The court charged that such was the duty of the landlord, and to that charge

counsel for the defendant owner took no exception and made no request. The charge was a correct one. (*Gelof* v. *Morgenroth*, 130 App. Div. 17, 19; *Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354.) In the *Gelof* case it was said in the opinion of this court: " In this case the structure was a part of the sidewalk, and was maintained in the sidewalk for the benefit of the defendant's premises. It is true that he had leased the store and cellar to a tenant who was under obligation to keep it in repair, but that did not relieve the owner of the building, who occupied the greater part of it for his own purposes, of the correlative duty of preventing the sidewalk from becoming dangerous to those using the street."

In *Klepper* v. *Seymour House Corporation* (246 N. Y. 85) Judge CRANE, writing for the Court of Appeals, said (at p. 94): "An owner cannot escape his duty of exercising reasonable care to maintain his property adjoining a highway in reasonably safe condition unless he parts with the entire possession and control of the premises. (*Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354.) VANN, J., writing in that case for this court, said: ' If he [the owner] transfers either title or possession, in part only, he does not escape the burden. * * * As the duty is imposed by law for the public safety, its extent is measured by whatever public safety requires. Anything less than the alienation of the entire property, either permanently, as by deed, or temporarily, as by lease, would leave the public without adequate protection.' "

The condition of this wooden planking was testified to by plaintiff who had noticed for several months that the planking was weak and bent when stepped upon. He was also corroborated by a young man working in an adjacent store. The condition had existed for such a long time as to charge both of the defendants with constructive notice of its condition. The worn plank which broke, broke entirely across and was wet and rotten throughout and when stepped on was weak and sagged down. Notice will be presumed where a defect is visible and apparent and has been in that condition so long that the city is presumed to have seen it, or failing to see it was negligent. (*Schmidt* v. *City of New York*, 179 App. Div. 667.) Much is made of plaintiff's testimony that there was nothing unusual about the planks that would cause him to think there was danger. Clearly he meant by this that the planking looked all right. He swore positively that for months the planks had sagged when stepped upon, and he was corroborated in this by other testimony. The worn and rotten condition of the planks as shown after the accident furnishes further corroboration.

We think the evidence was sufficient to present a question of fact as to the negligence of both of the defendants. There was no

evidence of contributory negligence on the part of plaintiff. Plaintiff testified that when he left the store he walked at an ordinary rate of speed.

The judgment appealed from should be affirmed, with costs to plaintiff, respondent, against the defendants, appellants.

McAVOY and SHERMAN, JJ., concur; FINCH, P. J., and MARTIN, J., dissent and vote for reversal and dismissal of complaint as to defendant the city of New York, and for affirmance as to defendant Garhill Realty Corporation.

MARTIN, J. (dissenting). The plaintiff, who conducted a refreshment stand at No. 189 West street, New York city, brought this action to recover damages for personal injuries sustained on July 28, 1927, in front of premises No. 218 Duane street, New York city.

The evidence established that the defendant Garhill Realty Corporation had owned the premises 218 Duane street since 1926. The store on the ground floor was leased to the firm of Ruggiero & Son, who conducted a fruit and vegetable business. In front of the building, extending its entire width and about three and a half feet from the building line toward the curb, was a wooden platform made of planks each eight inches wide; beyond the platform was a coping about one foot nine inches in width and from the edge of the coping to the curb was a cement sidewalk. The platform, which took the place of a part of the sidewalk, was between one and a half inches to five or six inches above the level of the sidewalk, and underneath the platform was an open space or vault to a depth of about eight feet extending down to the basement or cellar of the building.

There is testimony to the effect that the building was about one hundred years old; that the planking in question had been in place for about fifteen years and had never been repaired or replaced during that time; that the platform was used for the storage of boxes, barrels and crates and in addition Ruggiero & Son displayed thereon their fruits and vegetables; that usually the fruits and vegetables were kept moist or covered with ice to preserve them, which made the planking wet and caused the boards to rot; that a shed covering the sidewalk and platform prevented the sun from drying the platform.

The plaintiff testified that as he left the store and walked across the platform, one of the planks broke, his leg went through the hole and he sustained injuries to his foot and leg.

This case was submitted to the jury on the theory of negligence only, not on the theory of nuisance. The court said: " On the

other hand, if you find that there was no negligence on these defendants, or that the plaintiff himself was guilty of contributory negligence, then your verdict should be for the defendant."

The plaintiff contends that the city of New York is liable under chapter 23, article 15, section 183 of the Code of Ordinances, which reads as follows: " No board or plank walk shall be constructed or laid down in any street, without the written permission of the Borough President having jurisdiction."

The title to the streets being in the city as trustee for the public, no grant or permission can be legally given which will interfere with their public use. The right of the public to the use of the streets is absolute and paramount to any other. A presumption of or even an actual consent by the authorities to their use for private purposes is always subject and subordinate to the right of the public whenever required for public purposes, and such a grant or right cannot be presumed when it would have been unlawful.

The city had no authority to allow a part of the sidewalk to be removed and a platform to be erected thereon to hold fruit and vegetable stands.

The plaintiff relies upon the case of *Jorgensen* v. *Squires* (144 N. Y. 280) as authority to the effect that because this platform had remained in place for a number of years, permission to construct it will be presumed. That case was distinguished in *Deshong* v. *City of New York* (176 N. Y. 475) which clearly states the law that the city may not permit the construction of such a structure.

If the city did have authority to give such a permit, it would not be liable for negligence without notice. In the recent case of *Glenn* v. *Oakdale Contracting Co., Inc.* (257 N. Y. 497) the law with reference to notice is restated as follows: " For failure properly to maintain it, the city of New York, in the absence of notice of some defect, would not be liable for negligence. The same rule applies to the contractor. (*Schmidt* v. *City of New York*, 179 App. Div. 667; affd., 228 N. Y. 572.) Respondents invoke the principle represented in such decisions as *Storrs* v. *City of Utica* (17 N. Y. 104); *Brusso* v. *City of Buffalo* (90 N. Y. 679) and *Wilson* v. *City of Troy* (135 N. Y. 96). Those cases govern facts where a municipality has created an unsafe condition, usually an unguarded excavation, but they do not control a situation where the act in locating a bridge for pedestrians as a temporary substitute for a sidewalk or, as in this case, planking in lieu of a permanent pavement does not in itself cause a deviation from a reasonably safe condition. The planking, if strongly and prudently constructed,

is not required to equal in safety and convenience the pavement which had been removed. (*Nolan* v. *King*, 97 N. Y. 565, 571.) "

With reference to the appellant Garhill Realty Corporation the respondent says it is liable because it leased the premises to Ruggiero & Sons, knowing that moisture and ice from the fruit and vegetables on display would rot the boards, and that the platform was never inspected; that the landlord was charged with the duty of keeping the platform in a reasonably safe condition because the platform was used for his benefit and he retained general control over the entire building.

It is not contended by the respondent that either defendant had actual notice of the defective condition. Plaintiff relied on constructive notice to both defendants. The plaintiff testified that he had been in the habit of passing over the platform once a week or once in two weeks, and that about four or five months prior to the accident he noticed that the plank which broke was weak and gave under him. He contends that the failure of the city or the owner to inspect this platform, which inspection would have disclosed a defective condition present for four or five months, makes unnecessary, for the purpose of this action, any proof of actual notice to the defendants. The plaintiff says that he was careful and prudent in passing over the platform and that there is no evidence of any contributory negligence on his part.

The plaintiff did testify, however, that the defect, if any, was not observable. Despite the claim now made that there was constructive notice to both the city of New York and the owner of the property that the sidewalk was defective, the plaintiff testified upon his examination in the office of the corporation counsel prior to the trial, which testimony he confirmed by his testimony at the trial, that there was no noticeable defect. In the corporation counsel's office the plaintiff testified as follows: " Q. There's nothing unusual about the planks there that would cause you to think there would be danger? A. No." When the case was on trial he testified as follows: " Q. Were you asked this question on page 4: ' There was nothing unusual about the planks, that would cause you to think there would be danger,' and did you make this answer: ' No.' Did you say that? A. I did. Q. Was that true? A. Yes."

If there was nothing unusual to attract the attention of the plaintiff to any defect, it is difficult to see how the city of New York can be charged with constructive notice of a defective sidewalk. The plaintiff was about the premises frequently, and if he was unable to discover or observe any defect in the sidewalk, the city should not be charged with constructive notice. It is true

that the plaintiff did say in another part of his testimony that in walking over this place he found that it was weak and sagged, but this was at the trial many months after he had testified positively that there was nothing unusual about the planks that would cause any one to think there was danger.

Both appellants contend that there is no proof of any negligence on their part; that no notice of any defective condition of the planking or the platform was proved; and that by his own testimony the plaintiff was shown to be guilty of contributory negligence.

It is also the contention of the appellant the city of New York that the wooden platform in question was not used as a sidewalk by pedestrians walking on Duane street; that it was generally covered with boxes, barrels, crates and the wares of Ruggiero & Sons on display in front of their store; that the only part of the platform on which people walked was the entrance to the store itself, and that since the accident occurred at that spot, any liability resulting therefrom was on the owner of the building and not the city of New York.

We agree with the contention of the defendant the city of New York that there was no proof of either actual or constructive notice to the city of a defective condition.

The city of New York is required to use only reasonable care and diligence in detecting defects upon the public thoroughfare which might be dangerous and likely to cause an accident.

In the case of *Hunt* v. *Mayor, etc., of New York* (109 N. Y. 134, at p. 140) the Court of Appeals said: "The duty cast upon a municipal corporation to keep its streets in a safe condition for travel is not absolute, so as to impose liability upon the corporation in every case where a traveler, without fault on his part, sustains injury from a defective street. Its liability depends in all cases upon negligence, that is, upon the fact whether it has omitted to exercise due care, under the circumstances, in their maintenance or reparation. The mere existence of a defect from which a traveler sustains injury, does not, independently of negligence, establish a culpable breach of duty on the part of a municipality."

It is quite evident that the owner of this property at some time had removed a part of the sidewalk and replaced it with a wooden platform. Having replaced a part of the sidewalk, the owner was bound to keep it in a safe condition.

In *Gelof* v. *Morgenroth* (130 App. Div. 17) the court said: "It is undoubtedly true that the landlord would not be responsible for the negligence of the tenant, but where it appears that there was a duty upon the landlord to protect the portion of his premises

which extended into the street, a failure to perform that duty imposed a liability on him in favor of one who had no relation to the tenant but who was using the street."

In *Trustees of Canandaigua* v. *Foster* (156 N. Y. 354, 359) the court held that an implied duty rests upon the owner to use reasonable care in inspecting and repairing a grate constructed by him with the consent of the municipal authorities, in a sidewalk in front of his premises, when a part only of the structure on the abutting land is leased to and occupied by a tenant and that part includes by implication the exclusive right to use the grate as a beneficial appurtenance.

There is a clear distinction between cases where a landlord removes a part of a sidewalk and replaces it with a grating or other structure, such as a platform for his own use or that of the tenant, and cases where a person is injured on a sidewalk or public thoroughfare the surface of which has not been disturbed. In a case where the landlord has disturbed a part of the sidewalk and placed thereon a platform, it is his duty to keep that structure in a reasonably safe condition.

The judgment against the defendant the city of New York should be reversed, with costs, and the complaint dismissed, with costs to said defendant, and the judgment against the defendant Garhill Realty Corporation should be affirmed, with costs.

FINCH, P. J., concurs.

Judgment affirmed, with costs.