MARGARIDA DE CLARA, as Administratrix of the Estate of FRANCISCO DE CLARA, Deceased, Appellant, *v.* BARBER STEAM-SHIP LINES, INC., et al., Defendants, and NEW YORK DOCK COMPANY, Respondent, and Third-Party Plaintiff-Respondent. BARBER SECURITIES CORPORATION, Third-Party Defendant-Respondent.

Argued November 22, 1955; decided February 17, 1956.

*Thomas Grimes* and *Thomas C. Cusack* for appellant. I. Defendant was responsible for the dangerous condition of Pier 38. (*Murrain* v. *Wilson Line*, 270 App. Div. 372, 296 N. Y. 845; *Appel* v. *Muller*, 262 N. Y. 278; *Bernstein* v. *Olian*, 77 F. Supp. 672; *Abrams* v. *Manhattan Dial Mfg. Co.*, 190 Misc. 106;

*Noble* v. *Marx*, 298 N. Y. 106; *Dick* v. *Sunbright Steam Laundry Corp.*, 307 N. Y. 422; *Cullings* v. *Goetz*, 256 N. Y. 287; *Lafredo* v. *Bush Term. Co.*, 261 N. Y. 323; *Potter* v. *New York, O. & W. Ry. Co.*, 261 N. Y. 489.) II. There are no errors of law that require a new trial. (*Haefeli* v. *Woodrich Eng. Co.*, 255 N. Y. 442; *Ford* v. *Grand Union Co.*, 268 N. Y. 243; *Le Roux* v. *State of New York*, 307 N. Y. 397.) III. The only issue of fact undisposed of is the amount of the verdict. (*Betzag* v. *Gulf Oil Corp.*, 298 N. Y. 358, 301 N. Y. 576.)

*John F. X. Finn, George A. Garvey, Lillian E. Cuff* and *Constantine P. Lambos* for respondent. I. The Appellate Division properly dismissed the complaint. Plaintiff failed to prove any actionable negligence on the part of defendant New York Dock Company. II. Sole control of Pier 38 was in the tenant, defendant sharing no part of such control with the tenant. (*Pratt, Hurst & Co.* v. *Tailer*, 135 App. Div. 1; *Eisen* v. *Baudouine*, 169 App. Div. 549, 184 App. Div. 883, 229 N. Y. 535; *Murrain* v. *Wilson Line*, 270 App. Div. 372, 296 N. Y. 845; *Cullings* v. *Goetz*, 256 N. Y. 287; *Potter* v. *New York, O. & W. Ry. Co.*, 261 N. Y. 489; *Lafredo* v. *Bush Term. Co.*, 261 N. Y. 323; *Dick* v. *Sunbright Steam Laundry Co.*, 307 N. Y. 422; *Williams* v. *Saratoga Co. Agric. Soc.*, 277 App. Div. 742; *Dickey* v. *Masonic Foundation Corp.*, 266 App. Div. 763.) III. Even if defendant was under a duty to plaintiff's intestate to repair — which defendant asserts it was not — such duty was subject to a condition precedent that defendant be given written notice of the need for repairs, and no such notice was ever received or sent. (*Antonsen* v. *Bay Ridge Sav. Bank*, 292 N. Y. 143; *Dick* v. *Sunbright Steam Laundry Corp.*, 307 N. Y. 422; *McCarrick* v. *Liverpool Corp.*, [1947] A. C. 219; *Fisher* v. *Walters*, [1926] 2 K. B. 315; *Morgan* v. *Liverpool Corp.*, [1927] 2 K. B. 131; *Torrens* v. *Walker*, [1906] 2 Ch. 166; *Griffin* v. *Pallet*, [1926] 1 K. B. 17; *Bottomley* v. *Bannister*, [1932] 1 K. B. 458.) IV. Since the widow and dependent son of plaintiff's intestate elected to take compensation and failed to commence a statutory action against the third-party wrongdoer within the time limited by section 29 of the Workmen's Compensation Law, there resulted an assignment of their cause of action, if any, for the wrongful death of plaintiff's intestate to the insurance carrier.

Hence they had no right to maintain this action and are not the real parties in interest. (*Olker* v. *Salomone*, 283 App. Div. 948; *Skakandy* v. *State of New York*, 274 App. Div. 153, 298 N. Y. 886; *Eisenberg* v. *Adler Realty Co.*, 299 N. Y. 572; *Taylor* v. *New York Central R. R. Co.*, 294 N. Y. 397; *United States Fidelity & Guar. Co.* v. *Graham & Norton Co.*, 254 N. Y. 50; *Matter of Zirpola* v. *T. & E. Casselman, Inc.*, 237 N. Y. 367.) V. Since the cause of action on the beneficial interest of the widow and dependent son was assigned to the insurance carrier which paid the compensation, and since there was no proof that the adult children suffered any pecuniary loss or injury by reason of the death of plaintiff's intestate, the complaint should have been dismissed. (*Gross* v. *Abraham*, 306 N. Y. 525; *Holmes* v. *City of New York*, 269 App. Div. 95; *Matter of Dennison*, 203 Misc. 1004.) VI. The Appellate Division properly held that it was error for the trial court to instruct the jury that constructive notice was sufficient against the owner and that the owner might be held liable if it retained any measure of control over the demised premises. VII. The Appellate Division properly held that the trial court erred in excluding defendant's evidence that it did not receive notice of the defect from the lessee until after the accident, that it acted on the notice and that the lessee paid for the expense of the repairs. The trial court also erred in excluding other evidence on the question of control. VIII. Even if the court should find that the complaint should not have been dismissed, there are other issues of fact which at the very least require a new trial.

FULD, J. Francisco De Clara, a stevedore, was killed on Pier 38, Atlantic Basin, Brooklyn, New York, when a large metal door fell upon him. The pier where the accident occurred was owned by the New York Dock Company and leased to the Barber Steamship Lines, Inc. De Clara was employed by the Atlantic Stevedoring Company, an independent contractor engaged by Barber to load and unload its vessels.

In addition to his wife, De Clara left eight children, one of whom was a minor. The Workmen's Compensation Board made an award of death benefits to the widow and her infant son. Ten months later, having in the meantime been appointed administratrix of her husband's estate, she brought this action

to recover damages for his wrongful death. Although plaintiff joined as defendants both the owner of the pier and its tenant, Barber, service of process was vacated and set aside as against the latter, for reasons not here material (277 App. Div. 1118), and that defendant is no longer in the case. The remaining defendant, the dock company, disclaims liability on the ground that it had parted with possession and control of the pier, and, in addition, disputes plaintiff's standing to maintain the action.

Pier 38, where the accident occurred, was about 950 feet long, with large sliding doors — 85 of them — along each side. Each door was 23 feet high and 10 feet wide, weighed 1,700 pounds, and was suspended from an overhead track by 2 hangers. Attached to each hanger were 4 wheels, 2 large ones running along the top of the rail and 2 smaller ones underneath, linked by a pin, being designed to guide the larger wheels and prevent them from coming off the track. The bottom of each door fitted into a metal groove in the floor of the pier. If in proper condition, the doors could be moved easily by two employees, called "slingmen," who would slide them open to permit the stevedores to load or unload cargo on the vessels and close them when the day's work was done.

For some time before the accident, the estimates varying from two months to two years, difficulty had been experienced in opening and closing the door involved in the accident. Six or eight men were needed to move it instead of the usual two, and on a number of occasions crowbars were used. On the night of the accident, when the dock boss ordered the door closed, about eight men, including De Clara, pushed on it for upwards of five minutes without being able to budge it; suddenly, it fell, crushing and fatally injuring De Clara. Examination after the accident disclosed that the center pins linking the two small guide wheels at each end of the door were bent, creating an opening between the rail and guide wheels, which, the evidence showed, could have caused the large wheels to come off the rail and the door to fall.

By the lease between defendant dock company and its tenant, the landlord agreed, upon receiving written notice from the tenant, to "make repairs to and maintain said premises in as good condition as they were when accepted by the Tenant,

reasonable wear and tear excepted ''. The lease further provided, however, that, '' Without operating as a waiver of the requirement of such notice, the Landlord shall have the right at any time or times * * * to examine '' the premises and '' make such repairs and alterations as it shall deem necessary for [their] safety and preservation ''. Nothing was said in the lease about repairs by the tenant, and the only evidence on the subject indicated that Barber was not even permitted to make any.

Pier 38 was one of 30 piers owned by defendant on the Brooklyn water front. To police those piers and observe all that went on, defendant had watchmen, and to maintain them and keep them in safe condition and proper repair it also had a superintendent of maintenance and a crew of about 20 men stationed on them '' all the time.'' It was the job of this latter group to inspect the premises, and, if repairs were considered necessary, to make such repairs immediately, without even notifying the tenant. More particularly, defendant's superintendent was on Pier 38 every day during some weeks and never less than two or three days a week at any time, attending not only to the routine '' maintenance repairs '' — for which defendant landlord paid — but also to those repairs necessitated by damage caused by the tenant — for which the tenant paid.

Barber gave no written notice, or, for that matter, any notice, prior to the accident, that there was anything wrong with the door or that it needed repairing. However, defendant's superintendent acknowledged that he had heard, some time before the accident, that difficulty was being encountered with one of the doors and that crowbars were being used to open and close it.

Although he warned against the use of such crowbars, he made no inspection or inquiry to locate or track down the defective door. At the close of plaintiff's case, and again at the close of the entire case, defendant moved to dismiss the complaint on the ground, among others, that the evidence failed to establish that it had such possession and control of the pier as to subject it to liability in tort. The trial judge denied the motions and submitted the issue of possession and control to the jury, and it returned a verdict of $65,000 in plaintiff's favor. The Appellate Division, although affirming the '' implied findings, except as to the amount of the verdict,'' reversed on the law

and dismissed the complaint. It declared that defendant "owner was not liable in tort for a mere breach of the covenant to repair, more particularly where the covenant was to repair after notice and no notice was given, nor for a failure to exercise its right to examine the demised premises" (285 App. Div. 1062, 1063).

We first address ourselves to the question of plaintiff's standing to maintain this action. It is urged, in reliance upon the Workmen's Compensation Law (§ 29, subd. 2), that the passage of more than six months between the time of the award of death benefits and the commencement of the present suit effected an assignment of the cause of action to the insurance carrier and prevented anyone but the carrier, or the administratrix in its name, from bringing the suit. Defendant's position would be sound if the deceased employee's only next-of-kin were dependents. (See, e.g., *Matter of Zirpola* v. *T. & E. Casselman, Inc.*, 237 N. Y. 367, 375; *United States Fidelity & Guar. Co.* v. *Graham & Norton Co.*, 254 N. Y. 50, 55.) But where, as here, the deceased also left adult children who are not dependents, the statutory assignment is effective only to the extent of the dependents' beneficial interest, and the suit may be brought solely "through an administrator as the statutory trustee of the entire group of beneficiaries" (*United States Fidelity & Guar. Co.* v. *Graham & Norton Co., supra,* 254 N. Y. 50, 55), a group embracing the carrier as well as the nondependents. (See *Matter of Zirpola* v. *T. & E. Casselman, Inc., supra,* 237 N. Y. 367, 375; *Gross* v. *Abraham,* 306 N. Y. 525, 530.) Consequently, plaintiff, as administratrix, not only had standing, but, indeed, was the only person authorized, to institute the suit. Of course, any recovery will be received by her as trustee for distribution to those entitled to share, in proportions later to be determined. (Decedent Estate Law, § 133; see, also, *Matter of Zirpola* v. *T. & E. Casselman, Inc., supra,* 237 N. Y. 367, 372.) As to the other points directed to the subject of the nondependent children's "pecuniary injury," it is enough to say that we have examined them and found them lacking in merit. (See, e.g., *Gross* v. *Abraham, supra,* 306 N. Y. 525, 531; *Thomas* v. *Utica & Black Riv. R. R. Co.,* 6 N. Y. Civ. Pro. Rep. 353, 354, affd. 34 Hun 626, affd. 98 N. Y. 649.)

However, as already indicated, the primary question posed by the appeal concerns the imposition of a tort liability upon defendant. We put to one side the decisions dealing with the duty of care owed by a landlord out of possession to the person on property to which members of the public are admitted or to the passerby on a city street or public way adjoining the leased premises. (See, e.g., *Appel* v. *Muller*, 262 N. Y. 278, 282; *Lafredo* v. *Bush Term. Co.*, 261 N. Y. 323, 327; *Cullings* v. *Goetz*, 256 N. Y. 287, 293.) In a case such as the one before us, involving neither premises abutting upon a public street, a traveler on a highway nor property open to the public, the *sine qua non* of liability in tort is retention by the landlord of a measure of occupation and control over the leased premises. The governing rule was given definitive statement in *Cullings* v. *Goetz* (*supra*, 256 N. Y. 287); the court there held, and the holding has been reiterated over the years, that the requisite reservation of control is not effected or accomplished by a mere promise on the part of the landlord to make repairs at the tenant's request. (See, e.g., *Lafredo* v. *Bush Term. Co.*, *supra*, 261 N. Y. 323; *Solomon* v. *Brooklyn Cornell Utilities*, 291 N. Y. 593; *Dick* v. *Sunbright Steam Laundry Corp.*, 307 N. Y. 422, 424.)

The rationale underlying the rule, and it was set forth by Judge CARDOZO in the course of his opinion in the *Cullings* case, is that a covenant or agreement to repair " at the request of the lessee ", without more, constitutes, "not a reservation by an owner of one of the privileges of ownership ", but rather " the assumption of a burden for the benefit of the occupant with consequences the same as if there had been a promise to repair by a plumber or a carpenter " (256 N. Y., at p. 291). The court did, however, assume " the possibility of so phrasing and enlarging the rights of the lessor that occupation and control will be shared with the lessee ", and specifically called attention to decisions in Massachusetts " that draw a distinction between a covenant merely to repair and one to maintain in safe condition with supervision adequate to the end to be achieved " (256 N. Y., at pp. 290–291). And, the court continued (p. 291), " In the case now at hand, the promise, if there was any, was to act at the request of the lessee."

Here, then, in *Cullings* itself, is recognition that a landlord may retain the essential control of leased property by reserving to himself the right, to be exercised in his independent discre-

tion — as distinguished from " a promise  \*  \*  \*  to act at the [tenant's] request " (256 N. Y., at p. 291) — to enter the premises at any and all times and make repairs upon his own responsibility. Indeed, in recent years, this court has found evidence of such control in an act of repair made by the landlord after the accident, even though the primary duty of repair rested upon the tenant. (See *Noble* v. *Marx,* 298 N. Y. 106, 108; see, also, *Antonsen* v. *Bay Ridge Sav. Bank,* 292 N. Y. 143, 146; *Scudero* v. *Campbell,* 288 N. Y. 328, 329.) While these cases do not relax the requirement of requisite control in the landlord, they do indicate that such control may be demonstrated by a showing of something less than " ' the power and the right to admit people to the premises and to exclude people from them ' ". (Cf. *Cullings* v. *Goetz, supra,* 256 N. Y. 287, 290; *Lafredo* v. *Bush Term. Co., supra,* 261 N. Y. 323, 325.)

Be that as it may, the prerequisite power of control may not be inferred from a mere covenant to repair; that is what the court held in *Cullings* v. *Goetz* (*supra,* 256 N. Y. 287) and nothing we now say is intended to curtail that ruling. In the case before us, however, there is much more than such a covenant. Not only by the lease which it made with the tenant, but by the practice and procedure actually followed, defendant landlord kept and retained a general supervision over the premises. Besides agreeing to repair upon notice, defendant reserved " the right at any time " to go upon the demised property, inspect it and " make such repairs and alterations as it shall deem necessary for [its] safety and preservation ". The large degree of control which this provision reflects is further accentuated both by the fact that the tenant had neither the right nor the duty to repair the premises and by the fact that the landlord had its own watchmen to guard and police them, as well as its own superintendent of maintenance and a crew of 20 men to inspect them, spot the defects and make needed repairs.

An owner of a number of parcels of a specialized character may, as here, develop an extensive system of machinery for making inspections and repairs through trained personnel. Such an owner does not expect the tenant to duplicate the necessary machinery and paraphernalia or procure the manpower required to search out and correct defects on the property. This is particularly so where the tenant is assured (as was Barber herein)

that the landlord will inspect and repair without waiting to be asked; under such circumstances, he will not be inclined to make repairs on his own, even if free to do so. A landlord who has the right to come and go upon the leased premises as he pleases for the purpose of inspection and repair and who is at liberty to correct any defect as soon as it is found, must be regarded as having thereby reserved a privilege of ownership, sufficient to give rise to liability in tort.

In the light of the record before us, evidence designed to demonstrate that the tenant exercised some control of the pier, is totally indecisive, and completely beside the point, as to whether the landlord shared such control with the tenant. For that reason, the trial court was fully justified in excluding testimony, offered by defendant, that Barber had, after the accident, requested defendant to repair the door and that it had done so.

Nor is plaintiff barred from recovery by reason of Barber's failure to give notice of the defect to defendant. If the suit were one by the tenant against the landlord for breach of the covenant to repair, the written notice required by the lease might operate as a condition precedent to recovery. (See, e.g., *Hirsch* v. *Radt,* 228 N. Y. 100, 105.) Once it be decided, however, that the landlord shared control with the tenant, the lease provision is irrelevant in a suit brought by a third party and, in determining the landlord's liability in tort, the usual rules relating to notice in negligence actions apply. If the owner acquires knowledge of a defective condition or is otherwise chargeable with knowledge or notice thereof, he is subject to liability for injuries sustained because of his failure to correct that condition. (See *Magid* v. *City of New York,* 259 N. Y. 618, affg. 234 App. Div. 38; *Murray* v. *Usher,* 117 N. Y. 542; see, also, *Ford* v. *Grand Union Co.,* 268 N. Y. 243, 247; *Glenn* v. *Oakdale Contr. Co.,* 257 N. Y. 497; *Haefeli* v. *Woodrich Eng. Co.,* 255 N. Y. 442, 448–449; *De Milt* v. *Hart,* 235 N. Y. 464.) In the present case, there was ample evidence to charge defendant with constructive notice of the defective condition of the pier door. There was testimony that for a long period of time eight men were used to move the door, where only two should have been required; that crowbars were being employed in the operation; and that defendant's superintendent was not only aware

that crowbars were being used but had ordered the practice stopped. Under the circumstances, the jury could, as it did, properly find that defendant had such constructive notice as to impose upon it the duty of locating the faulty door and repairing it.

We are left only with the precise disposition to be made of the case. The dismissal of the complaint was unwarranted, and the judgment of the Appellate Division must, therefore, be reversed. Since that court, while otherwise affirming the jury's " implied findings of fact," registered disagreement with the size of the verdict and characterized it as " grossly excessive ", we may not reinstate the judgment of the trial court. (See Cohen and Karger, Powers of the New York Court of Appeals, pp. 566–567.) Nevertheless, there remains open to the Appellate Division the alternative of either ordering a new trial because of the excessiveness of the verdict or permitting the verdict to stand in a reduced amount upon plaintiff's consent to such a reduction. The case should, accordingly, be remitted to the Appellate Division for the limited purpose of enabling it to deal with that matter. (See *Betzag* v. *Gulf Oil Corp.,* 298 N. Y. 358, 301 N. Y. 576.)

The judgment of the Appellate Division should be reversed, with costs in this court and in the Appellate Division, and the case remitted to that court for further proceedings, not inconsistent with this opinion, in relation to the excessiveness of the verdict.

VAN VOORHIS, J. (concurring). I agree with Judge DESMOND's statement of the law, but consider that the facts of this case distinguish it from *Cullings* v. *Goetz* (256 N. Y. 287) in that the pier where this accident occurred was one of 30 owned and leased by respondent on the Brooklyn water front, that by the leasing arrangements the tenant was forbidden to make repairs, that respondent had watchmen and a crew of 20 men stationed constantly on these piers for the purpose of discovering and repairing defects, and that this was done regularly by respondent without notifying the tenant. Plaintiff's intestate was killed by the falling of a sliding door 23 feet in height and weighing 1,700 pounds, which respondent and not the tenant was equipped to repair, and would normally have discovered and repaired in the usual course of business.

Respondent had retained control of these piers to perform this kind of work which the tenant was prevented from doing. Under these circumstances, it seems to me that respondent is not exonerated as matter of law, and that the dismissal of the complaint should be reversed without curtailing the precedent of *Cullings* v. *Goetz* (*supra*).

Desmond, J. (dissenting). I dissent and vote to affirm.

The heart of this decision is in that part of the majority opinion which says that a landlord may be held liable solely because of a covenant in the lease permitting him " to enter the premises at any and all times and make repairs upon his own responsibility." None of the cited cases, nor any other case I have seen, so holds. Indeed, *Noble* v. *Marx* (298 N. Y. 106, 110), one of the most recent decisions listed in the majority opinion here, is exactly to the contrary, holding as it does that an express reservation in the lease, to the landlord, of the right to enter is not enough to prove control in the landlord. The true and only rule in this State is that of *Cullings* v. *Goetz* (256 N. Y. 287, 290) which says that the power of control which will make a landlord liable is " ' the power and the right to admit people to the premises and to exclude people from them ' " (see Warren on Negligence in the New York Courts, Vol. 2A, p. 374). Not only has that *Cullings* rule never been revised by this court but it was the sole and express basis for exculpation of the landlord in *Lafredo* v. *Bush Term. Co.* (261 N. Y. 323) where the facts were identical with those in this case with the single exception that the *Lafredo* lease did not confer on the landlord an express permission to re-enter the premises for repair purposes. The *Lafredo* lease, like the lease in the present case, was of a pier and sheds thereon. In neither case was any so-called " right to inspect and repair " of any practical importance since in each situation defendant landlord maintained a large repair force and in fact did all the repairs.

The judgment should be affirmed, with costs.

Conway, Ch. J., Froessel and Burke, JJ., concur with Fuld, J.; Van Voorhis, J., concurs in result in a separate opinion in which Conway, Ch. J., also concurs; Desmond, J., dissents in an opinion; Dye, J., taking no part.

Judgment reversed, etc.